IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TABRIA MONTGOMERY, | : | |
| Individually and as Administratrix | : | |
| of the ESTATE OF MICHAEL | : | CIVIL ACTION |
| MONTGOMERY, deceased, | : | No. 24-367 |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| BOBST MEX SA, et al. | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**JOSÉ RAÚL ARTEAGA**　　　　　　　　　　　　　　　　　　　　　　**August 26, 2024**
**United States Magistrate Judge[1]**

　　　　Tabria Montgomery sues Bobst MEX SA and others for strict products liability, negligence, wrongful death, and survival individually on behalf of herself and the estate of her father Michael Montgomery. Bobst MEX SA, the manufacturer of a machine alleged to have caused Michael Montgomery's death, moves to dismiss her claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (ECF 16.) Plaintiff opposes the motion and maintains that she is at least entitled to jurisdictional discovery. (ECF 21.) She has not sufficiently alleged facts to show the Court has personal jurisdiction over Bobst MEX SA, but because she has shown jurisdictional discovery is appropriate, Bobst MEX SA's Motion is denied without prejudice to renewal when that discovery is complete.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4, 8.)

I.  BACKGROUND

Plaintiff contends Michael Montgomery died as a result of a defectively designed, and manufactured, assembled Bobst Mastercut 145 PER 2.0 Die-Cutter. (Compl., ECF 1-1, ¶¶ 91, 94, 98, 101-03, 119.) She alleges that he "was working as a Die-Cutter operator" at a facility at 1035 Longford Road, Phoenixville, Pennsylvania when he died. (ECF 1-1, ¶¶ 2, 26, 33.) He frequently was required to physically enter the Die-Cutter when it jammed to remove and clear it. (*Id.* ¶ 46.) The existing interlock system was limited to a single entrance, which did not provide access to the entire machine. (*Id.* ¶ 47.) As a result, he had to access the machine through a location where facility personnel had removed panels to facilitate entry. (*Id.* ¶ 49.) Plaintiff alleges that the absence of an adequate interlock safety system for various interior parts of the Die-Cutter exacerbated the foreseeable risk of her father's injury and death. (*Id.* ¶ 71.) The Die-Cutter lowered a multi-ton pallet of cardboard onto Michael Montgomery and killed him. (*Id.* ¶¶ 62-63.)

Plaintiff alleges "'Bobst' designed, manufactured, marketed, sold and installed" the Die-Cutter at the Phoenixville facility. (*Id.* ¶ 26.) Her Complaint refers to Bobst MEX SA and Defendant Bobst Group North America, Inc. collectively as "Bobst," as if they are an indistinguishable, single entity. (ECF 1-1, ¶ 12.) She alleges Bobst Group North America, Inc.[2], a New Jersey corporation with its principal place of business in New Jersey, "has purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in

---

[2] While Plaintiff refers to the New Jersey Defendant as Bobst Group North America, Inc., it contends its "correct corporate name is Bobst North America, Inc." (ECF 17, ¶ 9.)

Pennsylvania, and regularly conducts business in Philadelphia County." (*Id.* ¶¶ 9, 11.) She also alleges Bobst MEX SA, like Bobst Group North America, Inc., "has purposely established significant contacts in Pennsylvania, and has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducts business in Philadelphia County." (*Id.* ¶ 8.)

Bobst MEX SA is a Swiss corporation or other business entity with its principal place of business in Mex, Switzerland. (*Id.*, ¶ 6.) According to Bobst MEX SA, it has no direct contact with Pennsylvania; rather, it sold a Die-Cutter to Bobst Group North America, Inc., which then sent it to a Graphic Packaging facility in Pennsylvania. (ECF 16, ¶ 8; ECF 16-5, ¶ 26.) It contends that it is not registered to do business in Pennsylvania, is neither incorporated in nor has its principal place of business in Pennsylvania, and lacks a registered agent, employees, telephone number, bank account or property in Pennsylvania. (ECF 16, ¶¶ 4-5.) Bobst MEX SA did not install, maintain, or have any other connection with the Die-Cutter once it was sold. (ECF 16-5, ¶¶ 30-32.) The company contends that its sole involvement was the design and manufacture of the machine, which occurred in Switzerland. (ECF 16, ¶ 8.) Bobst MEX SA supports its Motion with an affidavit from Marco Lideo, its "Head of Product Line: Die cutter Stampers Flexo Litho Lam, Folding Carton, Litho Laminating & Corrugated Board." (ECF 16-5, ¶ 2.) Lideo explains that "Bobst North America, Inc., was and remains a separate corporation from Bobst MexSA." (*Id.* ¶ 8.) Lideo provides a lengthy list of activities that Bobst MEX SA did *not* undertake in Pennsylvania, including "sell[ing] any machines to customers . . . ." (*Id.* ¶ 24; *see also id.* ¶¶ 11-23.) According to Lideo, Bobst MEX SA "designed, manufactured, and sold" the Die-Cutter at

3

issue in this litigation from "its place of business in Switzerland" to Bobst North America, Inc. (*Id.* ¶ 25-26.) The Die-Cutter "was not designed to comply with any Pennsylvania-specific regulations" and, since Bobst MEX SA "delivered the machine to the Port in New York," it has "had no control over or involvement with" it. (*Id.* ¶¶ 27, 29, 32.) Bobst MEX SA, was not responsible for its delivery to Pennsylvania. (*Id.* ¶ 29.)

Plaintiff contends Lideo's declaration is undermined by "a declaration that Bobst MEX SA previously filed with this Court in . . . *Mohammed v. Bobst Lyon, et al.*," (Civ. A. No. 17-1391 (E.D. Pa.)). (ECF 21 at 8.) In her view, the declaration in that case from Michael Cartier, a "Safety Manager and Field Service Administration Manager for Bobst North America, Inc." establishes that Bobst MEX SA has an "admitted relationship with Defendant Bobst North America, Inc., which served as the United States based Bobst entity that handles matters such as delivery and customer relations on behalf of Bobst MEX SA." (ECF 21 at 3-4 13.) Cartier declared that between May 2012 and "March 2015, the sales of BOBST MEX product by BOBST NORTH AMERICA to customers in Pennsylvania represented approximately 2.5% of BOBST MEX's overall worldwide sales." (Cartier Decl., ECF 21-1, ¶ 11.)

## II.   LEGAL STANDARD

Bobst MEX SA moves to dismiss Montgomery's claims against it under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Court's jurisdiction is proper under the Fourteenth Amendment's Due Process Clause only if Bobst MEX SA has "minimum contacts" with this forum, ensuring "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d

4

290, 300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Pennsylvania's long-arm statute authorizes jurisdiction to the fullest extent permissible under the Constitution: 'the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.'" *Renner v. Lanard Toys*, 33 F.3d 277, 279 (3d Cir. 1994) (quoting 42 Pa. Cons. Stat. Ann. § 5322(b) (1981)).

Even though Plaintiff's complaint largely refers to Bobst MEX SA and Bobst Group North America, Inc. as a unitary actor, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984). So, Bobst MEX SA's contacts with Pennsylvania must be shown with "reasonable particularity." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation and quotation omitted). Plaintiff bears the burden of establishing the Court has personal jurisdiction over it. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In the absence of an evidentiary hearing, she "need only establish a prima facie case of personal jurisdiction and . . . is entitled to have [her] allegations taken as true and all factual disputes drawn in [her] favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, because Bobst MEX SA raises a challenge under Rule 12(b)(2), she must sustain her burden of proof by introducing "sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone." *Id.* at 101 n. 6 (citing *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990)). Plaintiff "must respond with actual proofs, not mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735

F.2d 61, 66 n.9 (3d Cir. 1984); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (noting the plaintiff's burden to prove that jurisdiction is proper "by affidavits or other competent evidence" when a defendant raises a jurisdictional defense).

Personal jurisdiction may be general or specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). The Court can only exercise general jurisdiction over Bobst MEX SA if it has "continuous and systematic" contacts with the Eastern District of Pennsylvania. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). To determine whether there is specific jurisdiction, the Court considers whether: (1) Bobst MEX SA "purposefully directed its activities at the forum"; (2) Montgomery's claims "arise out of or relate to at least one of those activities"; and (3) whether the exercise of jurisdiction over Bobst MEX SA "otherwise comport[s] with fair play and substantial justice." *D'Jamoos ex rel. Est. of Weinegroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citations omitted). Bobst MEX SA need not have physically entered this district. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). But its contacts with this forum must amount to "a deliberate targeting" and must be more than "unilateral activity of those who claim some relationship with" it. *D'Jamoos*, 566 F.3d at 103.

### III. DISCUSSION

Plaintiff does not argue or claim that Bobst MEX SA is subject to general jurisdiction in Pennsylvania (*see* ECF 21 at 4), so the Court considers whether it has specific jurisdiction over Bobst MEX SA. The "'essential foundation of specific jurisdiction'" is "a strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365–66 (2021) (quoting *Helicopteros Nacionales de Colombia,*

6

*S. A. v. Hall*, 466 U.S. 408, 414 (1984). The Court begins by asking whether Bobst MEX SA purposefully availed itself "of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317 (citation omitted). In the context of the transmission of the Die-Cutter into Pennsylvania, "purposeful availment requires the defendant to 'have targeted the forum' deliberately." *Martinez v. Union Officine Meccaniche S.P.A.*, No. 22-1364, 2023 WL 3336644, at *2 (3d Cir. May 10, 2023) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality)). While Plaintiff broadly alleges that it did (ECF 1-1, ¶ 8), her sweeping and conclusory allegations are rebutted by Lideo's declaration which suggests that Bobst MEX SA has no direct ties to Pennsylvania, including no business registration, facilities, employees, banking, mailing, advertising, or sales in the state. (ECF 16-5, ¶¶ 12-24.) This is also true with respect to the Die-Cutter. (*See* ECF 16-5.) In response, Plaintiff contends that Cartier's declaration in *Mohammed* "is strong evidence that Bobst MEX SA purposefully availed itself of Pennsylvania and derived significant corporate revenues from Pennsylvania citizens and/or businesses," demonstrating that sales in the United States "that were physically accomplished by Bobst North America were done for the benefit of Bobst MEX SA . . . ." (ECF 21 at 9-10.) However, she concedes that "[d]iscovery is necessary to determine whether Bobst MEX SA similarly derived significant revenues from Pennsylvania customers at times relevant to" this litigation. (ECF 21 at 10.)

To obtain jurisdictional discovery, Plaintiff must present "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between" Bobst MEX SA and Pennsylvania. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation and internal quotation omitted). "A plaintiff may not . . .

7

undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). But unless a plaintiff's claim is "clearly frivolous," limited jurisdictional discovery is ordinarily appropriate. *Toys "R" Us*, 318 F.3d at 456 (citation omitted). It may be "particularly appropriate where a defendant is a corporation." *Rocke v. Pebble Beach Co.*, 541 F. App'x. 208, 212 (3d Cir. 2013).

Ultimately, the Court cannot exercise its jurisdiction based on "general assertions that Defendants *collectively* conduct a substantial amount of business or other activities in this district. *See Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2021 WL 1207476, at *7 (D.N.J. Mar. 31, 2021). However, Plaintiff's allegations, taken as true, combined with Cartier's declaration, are enough, if just so, to suggest the possible existence of the required contacts between Bobst MEX SA and Pennsylvania by virtue of a relationship with Bobst North America, Inc. While the current record regarding the nature of that relationship is not sufficiently developed to permit the Court to determine whether personal jurisdiction actually exists, Plaintiff may have limited discovery with respect to the nature of the relationship, if any, between Bobst MEX SA and Bobst North America, Inc.[3] *Cf., Shuker*

---

[3] In formulating any jurisdictional discovery requests, Plaintiff should understand that "[p]roving that a corporation is merely an alter ego is a burden that is notoriously difficult for plaintiffs to meet." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (internal quotation marks omitted). She must point to facts which suggest more than "a typical parent-subsidiary relationship, or an arm's length contractual relationship, between" Bobst MEX SA and Bobst North America, Inc. *Riad v. Porsche Cars N. Am., Inc.*, 657 F. Supp. 3d 695, 704 (E.D. Pa. 2023). She should also recognize that an agency relationship between Bobst MEX SA and Bobst North America, Inc. will not suffice to establish specific personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 136 (holding that the "agency theory" . . . appears to subject foreign corporations to general jurisdiction

*v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (permitting limited jurisdictional discovery to explore an "alter ego" theory of general jurisdiction, "i.e. jurisdiction arising from a defendant's continuous and systematic contacts with the forum, whether or not those contacts are related to the [plaintiffs'] cause of action") (internal quotation and citation omitted) (alteration in original).

## IV.   CONCLUSION

Although Plaintiff has yet to meet her burden to show that there are sufficient connections between Bobst MEX SA and Pennsylvania to support the Court's exercise of personal jurisdiction, her claims against it are not clearly frivolous. Plaintiff's request for limited jurisdictional discovery is appropriately granted. So, Bobst MEX SA's Motion seeking to dismiss Plaintiff's claims against it for lack of personal jurisdiction is denied without prejudice.

An appropriate Order follows.

---

whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the sprawling view of general jurisdiction [the Supreme Court] rejected in *Goodyear* [*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 928, (2011)" (citations and internal quotations omitted). Moreover, the Third Circuit "has declined to adopt the stream-of-commerce theory to exercise specific jurisdiction over the non-resident parent company of a manufacturer." *Avicolli v. BJ'S Wholesale Club, Inc.*, No. 21-1119, 2021 WL 2454454, at *8 (E.D. Pa. June 16, 2021) (citing *Shuker*, 885 F.3d at 780).