IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TABRIA MONTGOMERY, | : | |
| Individually and as Administratrix | : | |
| of the ESTATE OF MICHAEL | : | CIVIL ACTION |
| MONTGOMERY, deceased, | : | No. 24-367 |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| BOBST MEX SA, et al. | : | |
| *Defendant.* | : | |

### MEMORANDUM

JOSÉ RAÚL ARTEAGA                                                                                                              August 26, 2024
United States Magistrate Judge[1]

      Michael Montgomery sustained fatal injuries while operating a die-cutter machine at a Phoenixville, Pennsylvania manufacturing facility. After his death, Tabria Montgomery, individually and as administratrix of her father's estate, sued Bobst Mex SA and Bobst Group North America, Inc. (the "Bobst Defendants") and Graphic Packaging International, LLC, Graphic Packaging Corporation, Graphic Packaging Group, LLC, and Graphic Packaging International, Inc., (the "Graphic Packaging Defendants")[2] alleging claims for strict products liability, negligence, wrongful death,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4, 8.)

[2] Graphic Packaging International, LLC contends that Graphic Packaging Corporation and Graphic Packaging International, Inc. are defunct companies and that Graphic Packaging Group, LLC is not related to or part of the Graphic Packaging family and was not properly served. (*See* ECF 22 at 3; ECF 1, ¶¶ 5-6.) Plaintiff responds that she did not plead that Montgomery was employed by any particular Graphic Packaging

and survival. Graphic Packaging International, LLC moves to dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing they are barred by the Pennsylvania Workers' Compensation Act's ("PWCA's") exclusive remedy provision, 77 P.S. § 481(a). (*See* ECF 11.) For the following reasons, the Court denies the Motion.

I. **BACKGROUND**

Plaintiff alleges the Graphic Packaging Defendants owned and operated a production facility at 1035 Longford Road, Phoenixville, PA 19460 where the Bobst Defendants sold, delivered, installed, and/or repaired and serviced a Bobst Mastercut 145 PER 2.0 Die-Cutter which they designed, manufactured, and marketed. (Compl., ECF 1-1 at ¶¶ 26-27, 41.) Michael Montgomery worked as a Die-Cutter operator at the 1035 Longford Road facility. (*Id.* ¶¶ 33, 40.)

As alleged in the Complaint, the Graphic Packaging Defendants were responsible for supervising work performed at 1035 Longford Road, including overseeing the safety of the facility, materials, equipment, and personnel. (*Id.* ¶¶ 34-35.) They enacted and enforced corporate policies for the facility, including a policy or custom that required workers to clear jams in machinery including the Die-Cutter. (*Id.* ¶¶ 39, 60.) The Graphic

---

entity. (ECF 19, at 2.) Indeed, her Complaint alleges the Graphic Packaging Defendants, collectively, "operated as the same business entity and/or in concert with each other by and through their employees, servants, and agents, acting within the course and scope of their employment, service and agency" and makes no effort to distinguish between the Graphic Packaging Defendants with respect to any of their alleged conduct. (ECF 1-1 at ¶ 25; *see also id.* at ¶¶ 26-27, 34-39, 57, 61, 76-87, 104-115 (attributing all alleged conduct to "Graphic Packaging" without specifying a particular responsible entity).)

Packaging Defendants were required to inspect and maintain the Die-Cutter and ensure it operated safely. (*Id.* ¶¶ 37-38.)

A Die-Cutter cuts and transforms pallets of cardboard or paper into custom shapes, sizes, and colors with necessary slots and tabs. (*Id.* ¶ 43.) The Die-Cutter at 1035 Longford Road was not designed with an automatic shutoff mechanism to stop its operation if a worker was caught or trapped in the machine. (*Id.* ¶ 54.) It was designed with one, rear point of entry, equipped with a sensor-activated interlock system to prevent the machine from operating when workers enter it. (*Id.* ¶¶ 47-48.) This rear entry point did not grant access to the entire Die-Cutter. (*Id.* ¶ 49.) The machine had removable panels that could be used to gain entry to other areas to clear inaccessible jams. (*Id.* ¶ 52.) Plaintiff alleges the Graphic Packaging Defendants altered the Die-Cutter by removing a panel to give workers access to areas not reachable by the rear point of entry. (*Id.* ¶ 57.) She alleges it was foreseeable that the Die-Cutter would jam periodically and that workers like her father would be required to clear jams to continue operating the machine. (*Id.* ¶ 44.)

Michael Montgomery "followed the policies and procedures in place, both formal and informal, and customs ratified by the conduct of [the Graphic Packaging Defendants] at" the 1035 Longford Road facility. (*Id.* ¶ 61.) As a result of those policies and procedures he "was required to enter the Die-Cutter through the panel that had been removed to clear a jam that was inaccessible from the designated point of entry." (*Id.* ¶ 60.) On February 6, 2022, Montgomery entered the subject Die-Cutter through the panel the Graphic Packaging Defendants had removed to remove a jam in the machine. (*Id.* ¶¶ 82-

3

83.) He was then trapped and crushed by a pallet of cardboard that the Die-Cutter lowered and suffered massive crush injuries, traumatic asphyxia, cardiac arrest, hemorrhaging, and other injuries which resulted in his death. (*Id.* ¶¶ 62, 84.)

Plaintiff alleges the Graphic Packaging Defendants "knew or should have known of the unsafe conditions" at 1035 Longford Road "and had a duty to warn workers and safeguard workers, such as Mr. Montgomery, from the dangers posed by the unsafe working conditions." (*Id.* ¶ 76.) She alleges they "had a duty to provide workers such as Mr. Montgomery with a safe place to work, including a duty to inspect the work being performed and the equipment being utilized by workers." (*Id.* ¶ 78.) She describes Michael Montgomery as a "business invitee," to whom the Graphic Packaging Defendants owed a duty "to provide a reasonably safe environment, free from unreasonable hazards within which to perform the work." (*Id.* ¶ 106.) She also alleges the Graphic Packaging Defendants "had a duty to reasonably inspect, maintain, and repair the machinery in the Facility, including the subject Die-Cutter, to ensure that it was in safe working condition and that the workers, including Mr. Montgomery, were not exposed to unreasonable and unacceptable hazards in the performance of their work." (*Id.* ¶ 111.)

## II. LEGAL STANDARD

To withstand dismissal, Plaintiff's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow . . . the

court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Third Circuit employs a two-part test for deciding motions to dismiss. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 210. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

When a complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786-87). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record,

5

as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. DISCUSSION

Graphic Packaging International, LLC moves to dismiss Plaintiff's claims against it, arguing the PWCA's statutory preemption provision bars it from liability as decedent's employer. (ECF 11.) The PWCA is the sole means through which an injured employee (or their estate) can collect damages for an injury or death sustained during employment. 77 P.S. § 481(a). Under the statute, "a tort action by an employee against his employer for '*any* work-related injury' [is] barred." *Poyser v. Newman & Co.*, 522 A.2d 548 (Pa. 1987) (quoting *Kline v. Arden H. Verner Co.*, 469 A.2d 158, 160 (Pa. 1983)) (emphasis in original). "In exchange for the right to compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment." *Hancuff v. Prism Tech. & Assemblies, LLC*, 357 F. Supp. 2d 828 (W.D. Pa. 2005) (quoting *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa. Super. Ct. 2000)). As a result, "courts have been very cautious about permitting common law litigation in matters arguably connected with work-related injuries." *Winterberg v. Transportation Ins. Co.*, 72 F.3d 318, 322 (3d Cir. 1995).

Still, preemption is an affirmative defense that Graphic Packaging International, LLC has the burden to prove. *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016)); *see also Park v. Farnen*, No. 06-1920, 2007 WL 603037, at *1 (E.D. Pa. Feb. 22, 2007) ("[I]mmunity is an affirmative defense that must be pled and proved."). Generally,

affirmative defenses are inappropriate for resolution on a 12(b)(6) motion because the Court is limited to considering only the allegations in the complaint. *In re Asbestos Prods.*, 822 F.3d at 133 n.6. The Court may address an affirmative defense at this stage if "the defense is apparent on the face of the complaint and documents relied on in the complaint." *Lujan v. Joseph Cory Holdings, LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quotation omitted). So, while discovery is sometimes required to decide the issue of PWCA preemption, it is not always necessary. *See Hancuff v. Prism Techs. & Assemblies, LLC*, 357 F. Supp. 2d 828, 835 (W.D. Pa. 2005) (finding dismissal based on PWCA preemption was appropriate "without more extensive discovery"); *see also Danese v. Morrison-Knudsen/Slattery*, 784 F. Supp. 228 (E.D. Pa. 1992) (granting the defendant's motion to dismiss for failure to state a claim based on the PWCA). It is "premature to dismiss any claims based on the Pennsylvania Workers' Compensation Act" when "there is no basis for dismissal on the face of the complaint." *Shamblin v. Chesapeake Energy Corp.*, No. 12-89, 2012 WL 1902580, at *3 (M.D. Pa. May 25, 2012).

To prevail on its Motion, Graphic Packaging International, LLC must show that PWCA preemption "'is apparent on the face of the complaint' and documents relied on in the complaint." *Lupian*, 905 F.3d at 130 (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)); *see also Gorton v. Air & Liquid Sys. Corp.*, No. 17-1110, 2019 WL 757945, at *7 (M.D. Pa. Feb. 20, 2019) ("[I]f it is apparent from the face of a complaint that a claim would be barred by an exclusivity provision of a workers' compensation law, that claim would be subject to dismissal under Rule 12(b)(6)."). "Put another way, dismissal is appropriate under Rule 12(b)(6) only when 'preemption is manifest in the complaint

7

itself.'" *Lupian*, 905 F.3d at 130-31 (quoting *Asbestos Prods.*, 822 F.3d at 133 n.6). Here, it is not.

Whether PWCA preemption applies depends on a person's status as an employee or independent contractor. This is a threshold determination which must be made before awarding workers' compensation benefits. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 330 (Pa. 2000). The existence of an employer-employee relationship is a question of law based on the unique facts of each case. *JFC Temps, Inc. v. WCAB (Lindsay and G & B Packing)*, 680 A.2d 862, 864 (Pa. 1996). The factors considered in making this determination, include "control of [the] manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time." *Universal Am-Can, Ltd.*, 762 A.2d at 333 (quoting *Hammermill Paper Co. v. Rust Eng'g Co.*, 243 A.2d 389, 392 (Pa. 1968)).

Plaintiff contends Michael Montgomery's legal employer's identity is a disputed fact that is not apparent from the face of the Complaint. (*See* ECF 19 at 8.) She maintains dismissal is premature because her Complaint does not plead which, if any, of the Graphic Packaging Defendants was his employer and "[p]roduction facilities are full of contractors and subcontractors who work for entities other than the facility owner." (ECF 19 at 2, 8.) She argues that accepting her allegations as true and construing them in the light most favorable to her "inescapably leads to the conclusion that Plaintiff did *not*

plead that Graphic Packaging International, LLC was Mr. Montgomery's employer." (*Id.* at 8 (emphasis in original).) She also argues Graphic Packaging, LLC "has failed to present . . . an affidavit, declaration, payroll records, or any type of documentation that would even arguably demonstrate that Mr. Montgomery was [its] employee." (*Id.* at 12.) Plaintiff contends that "at a minimum" she should be given an opportunity to conduct discovery with respect to the applicability of the PWCA's exclusivity provision. (*Id.*) Graphic Packaging International, LLC responds that her "professed ignorance over the identity of [Michael Montgomery's employer] and request for discovery on the issue is incredulous," citing her duty to conduct a "reasonable factual investigation" prior to filing her Complaint. (ECF 22 at 4.) It argues that "she lumps four parties together to avoid the inevitable conclusion that the PWCA precludes Plaintiff's action against" it and that her "ruse is insufficient to avoid dismissal." (*Id.*)

At this stage of the litigation, Graphic Packaging International, LLC has not met its burden of proving the PWCA preemption affirmative defense. Plaintiff's allegations, taken as true, do show that it controlled the manner of Michael Montgomery's work, meeting *Universal Am-Can, Ltd.'s* first factor. She alleges that the Graphic Packaging Defendants, including Graphic Packaging International, LLC, "owned, operated, and/or oversaw a production facility located at 1035 Longford Road[,]"and that "Mr. Montgomery was working as a Die-Cutter operator at the production facility located at 1035 Longford Road." (ECF 1-1 (Comp. ¶¶ 27, 33)). The Court also accepts as true that the Graphic Packaging Defendants, including Graphic Packaging International, LLC, "directed and/or [were] responsible for the work and the supervision of the work being

9

performed at the Graphic Packaging facility and [were] responsible for the safety of workers at the Graphic Packaging Facility, such as Mr. Montgomery." (ECF 1-1 (Comp. ¶ 34)). Similarly, Plaintiff alleges "[a]t all times material hereto, Defendant Graphic Packaging established, implemented, enacted, and/or enforced corporate policies and procedures, including safety policies and procedures, for the Graphic Packaging Facility[,]" and Michael Montgomery followed the Graphic Packaging Defendants' formal and informal policies and procedures. (ECF 1-1 (Compl. ¶¶ 39, 60)).

However, Plaintiff's Complaint includes no allegations regarding the nature of their relationship, including the "terms of agreement between" Montgomery and Graphic Packaging International, LLC; "which party supplied the tools; whether payment [wa]s by the time or by the job; whether [Michael Montgomery's] work [wa]s part of" Graphic Packaging International, LLC's "regular business" or whether it had "the right to terminate" his employment. *Universal Am-Can, Ltd.*, 762 A.2d at 333 (internal citation omitted). Without information about any of these aspects of the relationship between Michael Montgomery and Graphic Packaging International, LLC, it is not apparent that he was its employee. It is at least plausible that he was not, so PWCA

preemption is not manifest on the face of the Complaint. Dismissal based on this affirmative defense is premature.[3]

## IV. CONCLUSION

Defendant Graphic Packaging International., LLC does not meet its burden of showing that PWCA preemption based on employer status is apparent on the face of the Complaint. As a result, its Motion to Dismiss for Failure to State a Claim is denied.

An appropriate Order follows.

---

[3] Where preemption is not "manifest in the complaint itself," the "allocation of the burden of proof suggests that a motion under Rule 12(c) for judgment on the pleadings is a more appropriate procedural vehicle for dismissing cases on preemption grounds . . . ." *In re Asbestos Prods.*, 822 F.3d at 133 n.6. This decision does not bar Graphic Packaging International, LLC from moving for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or for summary judgment under Rule 56 based on the PWCA's exclusivity provision if it can meet its burden to show that Michael Montgomery was its employee at the relevant time