IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TABRIA MONTGOMERY, | : | |
| Individually and as Administratrix | : | |
| of the ESTATE OF MICHAEL | : | CIVIL ACTION |
| MONTGOMERY, deceased, | : | No. 24-367 |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| BOBST MEX SA, et al. | : | |
| *Defendant*. | : | |

**MEMORANDUM**

**JOSÉ RAÚL ARTEAGA**                                                                 August 26, 2024
**United States Magistrate Judge**[1]

    Michael Montgomery sustained fatal injuries while operating a Die-Cutter machine at a Phoenixville, Pennsylvania manufacturing facility. After his death, Tabria Montgomery, individually and as administratrix of her father Michael's estate, sued Bobst MEX SA and Bobst Group North America, Inc. (the "Bobst Defendants")[2] and Graphic Packaging International, LLC, Graphic Packaging Corporation, Graphic

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4, 8.)

[2] Plaintiff refers to Defendants Bobst MEX SA and Bobst Group North America, Inc. collectively as "Bobst." (Compl., ECF 1-1 at ¶ 12; *see also id.* at ¶¶ 26, 41, 45, 53, 59, 66-69, 71-75, 91, 93-98, 100-103 (attributing all alleged conduct to "Defendant Bobst" without specifying a particular responsible entity).) Although Plaintiff directs her claims against Bobst Group North America, Inc., it contends its "correct corporate name is Bobst North America, Inc." (ECF 17, ¶ 9; *see also* ECF 29 at 1.) The Court uses that name for purposes of this Opinion. Also, Bobst MEX SA, through an affidavit from its Head of Product Line for Die-Cutters, Marco Lideo, alleges "Bobst North America, Inc., was and remains a separate corporation from Bobst Mex SA." (ECF 16-5, ¶ 8.)

Packaging Group, LLC, and Graphic Packaging International, Inc., (the "Graphic Packaging Defendants")[3] alleging claims for strict products liability, negligence, wrongful death, and survival. Bobst North America, Inc. filed Cross-Claims (ECF 17) and Amended Cross-Claims (ECF 29) against its Co-Defendants, Graphic Packaging Corporation, Graphic Packaging Group, LLC, Graphic Packaging International, Inc., and Graphic Packaging International, LLC, for implied indemnity and contribution, as well as contractual indemnity. Graphic Packaging International, LLC moves to dismiss the Amended Cross-Claims (ECF 30) arguing they are barred by the Pennsylvania Workers' Compensation Act's ("PWCA's") exclusive remedy provision, 77 P.S. § 481(a). (ECF 30 at ¶¶ 28-35.) For the following reasons, the Court denies the Motion.

I.   **BACKGROUND**

Plaintiff alleges the Graphic Packaging Defendants owned and operated a production facility at 1035 Longford Road, Phoenixville, PA 19460 where the Bobst Defendants sold, delivered, installed, and/or repaired and serviced a Bobst Mastercut

---

[3] Graphic Packaging International, LLC contends that Graphic Packaging Corporation and Graphic Packaging International, Inc. are defunct companies and that Graphic Packaging Group, LLC is not related to or part of the Graphic Packaging family and was not properly served. (*See* ECF 33 at 2; ECF 1, ¶¶ 5-6.) Plaintiff responds that she did not plead that Michael Montgomery was employed by any particular Graphic Packaging entity. (ECF 19, at 2.) Indeed, her Complaint alleges the Graphic Packaging Defendants, collectively, "operated as the same business entity and/or in concert with each other by and through their employees, servants, and agents, acting within the course and scope of their employment, service and agency" and makes no effort to distinguish between the Graphic Packaging Defendants with respect to any of their alleged conduct. (ECF 1-1 at ¶ 25; *see also id.* at ¶¶ 26-27, 34-39, 57, 61, 76-87, 104-115 (attributing all alleged conduct to "Graphic Packaging" without specifying a particular responsible entity).)

145 PER 2.0 Die-Cutter which they designed, manufactured, and marketed. (Compl., ECF 1-1 at ¶¶ 26-27, 41.) Michael Montgomery worked as a Die-Cutter operator at the 1035 Longford Road facility. (*Id.* ¶¶ 33, 40.)

As alleged in the Complaint, the Graphic Packaging Defendants were responsible for supervising work performed at 1035 Longford Road, including overseeing the safety of the facility, materials, equipment, and personnel. (*Id.* ¶¶ 34-35.) They enacted and enforced corporate policies for the facility, including a policy or custom that required workers to clear jams in machinery including the Die-Cutter. (*Id.* ¶¶ 39, 60.) The Graphic Packaging Defendants were required to inspect and maintain the Die-Cutter and ensure it operated safely. (*Id.* ¶¶ 37-38.)

A Die-Cutter cuts and transforms pallets of cardboard or paper into custom shapes, sizes, and colors with necessary slots and tabs. (*Id.* ¶ 43.) The Bobst Defendants did not design the Die-Cutter at 1035 Longford Road with an automatic shutoff mechanism to stop its operation if a worker was caught or trapped in the machine. (*Id.* ¶ 54.) It was designed with one, rear point of entry, equipped with a sensor-activated interlock system to prevent the machine from operating when workers enter it. (*Id.* ¶¶ 47-48.) This rear entry point did not grant access to the entire Die-Cutter. (*Id.* ¶ 49.) The machine had removable panels that could be used to gain entry to other areas to clear inaccessible jams. (*Id.* ¶ 52.) Plaintiff alleges the Graphic Packaging Defendants altered the Die-Cutter by removing a panel to give workers access to areas not reachable by the rear point of entry. (*Id.* ¶ 57.) She alleges it was foreseeable that the Die-Cutter would jam

periodically and that workers like her father would be required to clear jams to continue operating the machine. (*Id.* ¶ 44.)

Michael Montgomery "followed the policies and procedures in place, both formal and informal, and customs ratified by the conduct of [the Graphic Packaging Defendants] at" the 1035 Longford Road facility. (*Id.* ¶ 61.) As a result of those policies and procedures he "was required to enter the Die-Cutter through the panel that had been removed to clear a jam that was inaccessible from the designated point of entry." (*Id.* ¶ 60.) On February 6, 2022, he entered the subject Die-Cutter through the panel the Graphic Packaging Defendants had removed to remove a jam in the machine. (*Id.* ¶¶ 82-83.) He was then trapped and crushed by a pallet of cardboard that the Die-Cutter lowered and suffered massive crush injuries, traumatic asphyxia, cardiac arrest, hemorrhaging, and other injuries which resulted in his death. (*Id.* ¶¶ 62, 84.)

Plaintiff alleges the Graphic Packaging Defendants "knew or should have known of the unsafe conditions" at 1035 Longford Road "and had a duty to warn workers and safeguard workers, such as Mr. Montgomery, from the dangers posed by the unsafe working conditions." (*Id.* ¶ 76.) She alleges they "had a duty to provide workers such as Mr. Montgomery with a safe place to work, including a duty to inspect the work being performed and the equipment being utilized by workers." (*Id.* ¶ 78.) She describes Michael Montgomery as a "business invitee," to whom the Graphic Packaging Defendants owed a duty "to provide a reasonably safe environment, free from unreasonable hazards within which to perform the work." (*Id.* ¶ 106.) She also alleges the Graphic Packaging Defendants "had a duty to reasonably inspect, maintain, and repair

4

the machinery in the Facility, including the subject Die-Cutter, to ensure that it was in safe working condition and that the workers, including Mr. Montgomery, were not exposed to unreasonable and unacceptable hazards in the performance of their work." (*Id.* ¶ 111.)

Bobst North America, Inc.'s Amended Cross Claim, "[w]ithout admitting or denying the substance of Plaintiff's allegations, . . . incorporates by reference all allegations in Plaintiff's Complaint against" the Graphic Packaging Defendants. (ECF 29, ¶ 8.) Bobst North America, Inc. further alleges that it entered into a Purchase Agreement for the subject Die-Cutter with Graphic Packaging International, LLC on or about September 6, 2019. (ECF 29, ¶ 13; *see* ECF 29-2.) Relevant here, Paragraph 12—"the Limitation of Liability, Safety and Indemnification" provision—of the General Terms and Conditions ("Terms and Conditions") Attached To and Made a Part of the Bobst North America Purchase Agreement provides that:

> Buyer [Graphic Packaging International, LLC] agrees to provide all Equipment users (including its own employees and independent contractors) all of Seller[ Bobst North America, Inc.]'s safety information as contained in warnings, instructions and owner's manuals, and to adequately train all users in the safe use and maintenance of the Equipment including, but not limited to, use of safety features of the Equipment such as guards and interlocks. Buyer agrees to defend, indemnify and hold Seller harmless from and against all claims, losses, damages, liabilities and expense (including reasonable attorneys' fees) to the extent that they relate to or have been caused by Buyer's failure to comply with the provisions of this Agreement or Buyer's negligence.

(ECF 29-2 at ECF p. 24.) Paragraph 15 of the Terms and Conditions includes a New Jersey choice of law provision that governs "[a]ny controversy or dispute between the parties . . . ." (*Id.* at ECF p. 24.) Bobst North America, Inc. alleges that Graphic Packaging

5

International "agreed to and became obligated by the terms of the Purchase Agreement, including but not limited to its indemnification and choice of law provisions," through its partial performance when it paid for and accepted delivery of the Die-Cutter. (ECF 19 at ¶¶ 18-19.)

## II.     LEGAL STANDARD

To withstand dismissal, Bobst North America, Inc.'s Amended Cross-Claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the allegations pled "allow . . . the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Third Circuit employs a two-part test for deciding motions to dismiss. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 210. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

6

When a cross-claim includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786-87). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. DISCUSSION

#### A. Bobst North America Inc.'s Common Law Implied Indemnity and Contribution Claim Withstands Dismissal.

##### 1. Dismissal of the Common Law Cross-Claim is Premature Under Pennsylvania Law.

Graphic Packaging International, LLC moves to dismiss Bobst North America, Inc.'s cross-claim against it for implied indemnity and contribution, arguing the PWCA precludes it. (*See* ECF 30, ¶ 31; ECF 30-1 at 4-7). Courts are "very cautious about permitting common law litigation in matters arguably connected with work-related injuries." *Winterberg v. Transportation Ins. Co.*, 72 F.3d 318, 322 (3d Cir. 1995). In Pennsylvania, the PWCA is the only avenue for an injured employee (or their estate) to

7

collect damages for an on-the-job injury or death. 77 P.S. § 481(a). It bars "a tort action by an employee against his employer for '*any* work-related injury'. . . ." *Poyser v. Newman & Co.*, 522 A.2d 548 (Pa. 1987) (quoting *Kline v. Arden H. Verner Co.*, 469 A.2d 158, 160 (Pa. 1983)) (emphasis in original). It also dictates that an employer is not "liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability . . . shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action." 77 P.S. § 481(b). "Pennsylvania law irrefutably" bars "third-party claims for contribution or indemnity from an employer . . . that has paid workers' compensation benefits to an injured employee" where there is no "express written agreement to the contrary[.]" *Snider v. Sterling Airways, Inc.*, No. 13-2949, 2016 WL 4159413, at *9 (E.D. Pa. Aug. 5, 2016); *see also Schlosser v. Lyras*, No. 04-140J, 2006 WL 2583753, at *12 (W.D. Pa. Sept. 7, 2006) (holding the PWCA shielded the United States from contribution and indemnity cross-claims because, for purposes of the statute, the third-party plaintiffs were its employees).

Whether PWCA preclusion applies depends on a person's status as an employee or independent contractor. This is a threshold determination which must be made before awarding workers' compensation benefits. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 330 (Pa. 2000). The existence of an employer-employee relationship is a question of law based on the unique facts of each case. *JFC Temps, Inc. v. WCAB (Lindsay and G & B Packing)*, 680 A.2d 862, 864 (Pa. 1996). The factors considered in making this determination, include "control of [the] manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the

8

work or occupation; skill required for performance; whether one is engaged in a distinct occupation or business; which party supplied the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time." *Universal Am-Can, Ltd.*, 762 A.2d at 333 (quoting *Hammermill Paper Co. v. Rust Eng'g Co.*, 243 A.2d 389, 392 (Pa. 1968)).

Preemption is an affirmative defense that Graphic Packaging International, LLC has the burden to prove. *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.6 (3d Cir. 2016)); *see also Park v. Farnen*, No. 06-1920, 2007 WL 603037, at *1 (E.D. Pa. Feb. 22, 2007) ("[I]mmunity is an affirmative defense that must be pled and proved."). Generally, affirmative defenses are inappropriate for resolution on a 12(b)(6) motion because the Court may only consider the Complaint's allegations or any documents it relies on. *In re Asbestos Prods.*, 822 F.3d at 133 n.6. Dismissal based on the PWCA is premature when "there is no basis" to do so "on the face of the complaint." *Shamblin v. Chesapeake Energy Corp.*, No. 3:12-CV-0089, 2012 WL 1902580, at *3 (M.D. Pa. May 25, 2012). "Put another way, dismissal is appropriate under Rule 12(b)(6) only when 'preemption is manifest in the complaint itself.'" *Lupian*, 905 F.3d at 130-31 (quoting *Asbestos Prods.*, 822 F.3d at 133 n.6). Discovery is sometimes required to decide the issue of PWCA preemption, although it is not always necessary. *See Hancuff v. Prism Techs. & Assemblies, LLC*, 357 F. Supp. 2d 828, 835 (W.D. Pa. 2005) (finding dismissal based on PWCA preemption was appropriate "without more extensive discovery"); *see also Danese v. Morrison-Knudsen/Slattery*, 784 F.

9

Supp. 228 (E.D. Pa. 1992) (granting the defendant's motion to dismiss for failure to state a claim based on the PWCA).

Graphic Packaging International, LLC contends that the PWCA's limitations on third-party contribution and indemnity apply to bar Bobst North America, Inc.'s cross-claims against it because the Complaint alleges Michael Montgomery was its employee and "that he suffered fatal injuries in the course and scope of his employment." (ECF 30-1 at 4-6 (citing ECF 1-1 at ¶¶ 33-34).) To obtain dismissal of Bobst North America, Inc.'s implied indemnity and contribution cross-claim, Graphic Packaging International, LLC must show that its status as Michael Montgomery's employer is apparent from the Complaint and any documents it relies on. *Lupian*, 905 F.3d at 130 (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)); *see also Gorton v. Air & Liquid Sys. Corp.*, No. 17-1110, 2019 WL 757945, at *7 (M.D. Pa. Feb. 20, 2019) ("[I]f it is apparent from the face of a complaint that a claim would be barred by an exclusivity provision of a workers' compensation law, that claim would be subject to dismissal under Rule 12(b)(6)."). Bobst North America, Inc. argues that whether Michael Montgomery was Graphic Packaging International, LLC's employee is an open question that cannot be decided until "the record is further developed on this issue." (ECF 33 at 5-6.) Its argument prevails.

Taken as true, Plaintiff's allegations, incorporated by reference into Bobst North America, Inc.'s Cross-Claims, suffice to show that Graphic Packaging International, LLC controlled the manner of Michael Montgomery's work, consistent with *Universal Am-Can, Ltd.'s* first requirement. She alleges that the Graphic Packaging Defendants, including

Graphic Packaging International, LLC, "owned, operated, and/or oversaw a production facility located at 1035 Longford Road[,]"and that "Mr. Montgomery was working as a Die-Cutter operator at the production facility located at 1035 Longford Road." (ECF 1-1 (Comp. ¶¶ 27, 33)). The Court also accepts as true that the Graphic Packaging Defendants, including Graphic Packaging International, LLC, "directed and/or [were] responsible for the work and the supervision of the work being performed at the Graphic Packaging facility and [were] responsible for the safety of workers at the Graphic Packaging Facility, such as Mr. Montgomery." (ECF 1-1 (Comp. ¶ 34)). Similarly, Plaintiff alleges "[a]t all times material hereto, Defendant Graphic Packaging established, implemented, enacted, and/or enforced corporate policies and procedures, including safety policies and procedures, for the Graphic Packaging Facility[,]" and Michael Montgomery followed the Graphic Packaging Defendants' formal and informal policies and procedures. (ECF 1-1 (Compl. ¶¶ 39, 60)).

However, neither Plaintiff's Complaint nor Bobst North America, Inc.'s cross-claim include allegations regarding the nature of the relationship between Michael Montgomery and Graphic Packaging International, LLC, including the "terms of agreement between" them; "which party supplied the tools; whether payment [wa]s by the time or by the job; whether [Michael Montgomery's] work [wa]s part of" Graphic Packaging International, LLC's "regular business" or whether it had "the right to terminate" his employment. *Universal Am-Can, Ltd.*, 762 A.2d at 333 (internal citation omitted). Without information about any of these aspects of the relationship between Michael Montgomery and Graphic Packaging International, LLC, it is not apparent that

11

he was its employee. It is at least plausible that he was not. Because PWCA preemption is not manifest on the face of the Amended Cross-Claims, it would be premature to dismiss the common-law cross-claim based on this affirmative defense.

## 2. Even if New Jersey Law Governs, Dismissal of the Common Law Cross-Claim Would Still Be Premature.

Graphic Packaging International, LLC also argues that Bobst North America, Inc.'s common law cross-claim should be dismissed if, instead of the PWCA, New Jersey law applies under the Purchase Agreement's choice of law provision. (ECF 30-1 at 6.) It contends that New Jersey's workers' compensation law, like Pennsylvania's, "'erect[s] an absolute barrier to third-party claims for contribution against employers.'" (*Id.* at 6-7 (quoting *Slater v. Skyhawk Transp., Inc.*, 77 F. Supp. 3d 580, 586 (D.N.J. 1999).) And with respect to indemnity, it argues that New Jersey, like Pennsylvania, permits third parties to seek indemnification "in only limited circumstances." (*Id.* at 6.) It argues that while the New Jersey law "permits third parties to seek indemnification from employers on an implied indemnification theory," this broader exception "would violate Pennsylvania's public policy" which strongly favors the PWCA's exclusive remedy rule. (*Id.* at 6-7.) So, it maintains the Court cannot enforce the New Jersey choice of law provision to permit a claim for common law implied indemnity. (*Id.* at 7.)

Here too, Graphic Packaging International, LLC's arguments are premature. Based on the pleadings, at this stage of the litigation, it is at least plausible that Michael Montgomery was not its employee. So, it is too soon to address whether New Jersey or Pennsylvania's workers' compensation law governs Bobst-North America's common law

12

cross claim and, if it does, whether it would preclude relief for contribution and/or implied indemnity.

### B. Bobst North America Inc.'s Contractual Indemnity Cross-Claim Withstands Dismissal.

Graphic Packaging International, LLC argues that Bobst North America, Inc.'s contractual indemnity cross-claim should be dismissed because the limitation of liability language in the "Terms and Conditions is insufficient to overcome the immunity afforded by the PWCA." (ECF 30-1 at 7-9.) It also argues that dismissal is appropriate because "regardless" of whether Pennsylvania or New Jersey law applies to the cross-claim, "the Limitation of Liability provision in the General Terms and Conditions does not contain any language requiring [it] to indemnify Bobst for *Bobst's* own negligence." (ECF 34 at 5 (emphasis in original).) Bobst North America, Inc. responds that the two parties are "sophisticated commercial entities" that "entered into an express contract whereby they agreed that New Jersey law would apply to disputes under the contract" and that "Graphic Packaging would indemnify Bobst NA against any claims to the extent caused by Graphic Packaging's negligence or failure to comply with the contract." (ECF 33 at 11.) It argues that nothing in New Jersey's Worker's Compensation Act "'precludes an employer from assuming a contractual duty to indemnify a third party through an express agreement.'" (ECF 33 at 8 (quoting *Estate of D'Avila v. Hugo Neu Schnitzer East*, 121 A3d 388, 391 (N.J. Sup. Ct. 2015).) And it also argues that it has pled that the Purchase Agreement is the kind of express written agreement that would provide an exception to the PWCA's exclusive remedy rule. (ECF 33 at 6.-7.)

13

Despite the parties' arguments, it is also too soon to resolve questions about whether the PWCA or the New Jersey Worker's Compensation Act preempt Bobst North America's contractual indemnity cross-claim. The Court cannot presume that Michael Montgomery was an employee and the pleadings do not make it facially apparent that an exclusivity provision of a workers' compensation law would bar the cross-claim.

## IV. CONCLUSION

Defendant Graphic Packaging International, LLC cannot meet its burden to show that either the PWCA or New Jersey Worker's Compensation Act provide the exclusive remedy for claims arising from Michael Montgomery's death until his employer's identity is apparent.[4] To decide otherwise would put the proverbial cart before the horse. As a result, Graphic Packaging International, LLC's Motion to Dismiss Bobst North America, Inc.'s Cross-Claims is denied.

An appropriate Order follows.

---

[4] Where preemption is not "manifest in the complaint itself," the "allocation of the burden of proof suggests that a motion under Rule 12(c) for judgment on the pleadings is a more appropriate procedural vehicle for dismissing cases on preemption grounds . . . ." *In re Asbestos Prods.*, 822 F.3d at 133 n.6.