IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TABRIA MONTGOMERY, : | |
| Individually and as : | CIVIL ACTION |
| Administratrix of the : | No. 24-367 |
| ESTATE OF MICHAEL : | |
| MONTGOMERY, Deceased, : | |
| *Plaintiff*, : | |
| v. : | |
| : | |
| BOBST MEX SA, et al. : | |
| *Defendants.* : | |

**MEMORANDUM**

**JOSÉ RAÚL ARTEAGA**　　　　　　　　　　　　　　　　　　　　December 13, 2024
**United States Magistrate Judge[1]**

　　　　Defendant Bobst Mex SA renews its motion to dismiss Plaintiff Tabria Montgomery's claims against it for lack of jurisdiction. (ECF 47.) Plaintiff, who had an opportunity to conduct jurisdictional discovery after Bobst Mex SA's prior motion to dismiss was denied without prejudice, opposes the motion. (ECF 48.) For the reasons set forth in this Memorandum, Bobst Mex SA lacks sufficient contacts with Pennsylvania to be amenable to specific personal jurisdiction here, so Bobst Mex SA's Motion is granted.

---

[1] This case was reassigned to me after the parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4, ECF 8.)

1

## I. BACKGROUND

Plaintiff's father, Michael Montgomery, sustained fatal injuries while operating a Bobst Mastercut 145 PER 2.0 Die-Cutter machine bearing Serial No. BSA05662000208/1951 ("Die-Cutter"). (ECF 48 at 5.) Michael Montgomery operated the Die-Cutter at Defendant Graphic Packaging International LLC's ("GPI") production facility in Phoenixville, Pennsylvania. (*Id.*) The Die-Cutter is a machine that "cuts and transforms pallets of cardboard and/or paper into customizable sizes, shapes, and colors and with desired slots and tabs." (ECF 1-1 at ¶ 43.) Michael Montgomery was killed while trying to fix a jam in the Die-Cutter on February 6, 2022. (ECF 48 at 5.)

Plaintiff, individually, and as administratrix of Michael Montgomery's Estate, filed a Complaint in the Philadelphia County Court of Common Pleas against multiple defendants, including GPI, Bobst Mex SA, and Bobst North America, claiming negligence and strict products liability. (*See generally* ECF 1-1.) In her Complaint, Plaintiff refers to Bobst Mex SA and Bobst North America collectively as "Bobst," alleging "Bobst" designed, manufactured, sold, and installed the subject Die-Cutter at the Pennsylvania facility. (*Id.* at ¶¶ 12, 26.) Plaintiff alleges that both Bobst Mex SA and Bobst North America have "purposely established significant contacts in Pennsylvania[.]" (*Id.* at ¶¶ 9, 11.) Bobst Mex SA is a Swiss corporation with its principal place of business in Mex, Switzerland. (ECF 16-5 at ¶¶ 6-8.) Bobst North America, a separate entity, is a New Jersey corporation with its principal place of business in New Jersey. (ECF 1-1 at ¶ 9.)

GPI removed Plaintiff's case to this Court. (ECF 1.) Bobst Mex SA filed a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (ECF 16),

2

which Plaintiff opposed. (ECF 24.) The Court denied Bobst Mex SA's motion without prejudice and granted Plaintiff the opportunity to conduct jurisdictional discovery with respect to the nature of the relationship, if any, between Bobst Mex SA and Bobst North America. (ECF 38.) Plaintiff issued jurisdictional discovery in the form of a set of interrogatories and requests for production and deposed two witnesses. Following jurisdictional discovery, Bobst Mex SA renewed its motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(2). (ECF 47.)

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(2)

Dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2) is proper where it appears that the exercise of jurisdiction over a defendant offends traditional notions of fair play and substantial justice—that is, where neither the defendant nor the controversy has a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. Fed. R. Civ. P. 12(b)(2); *see O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Because Bobst Mex SA moves to dismiss Plaintiff's claims against it for lack of personal jurisdiction, she bears the burden of showing the basis for jurisdiction. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). To meet her burden, Plaintiff must proffer evidence of jurisdiction through sworn affidavits or other documents. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). In the absence of an evidentiary hearing, she "need only establish a prima facie case of personal jurisdiction and . . . is entitled to have [her] allegations taken as true and all factual disputes drawn in [her] favor." *Miller*, 384 F.3d at 97.

B.     **Personal Jurisdiction**

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-15 (1984). Plaintiff neither argues nor claims that Bobst Mex SA is subject to general personal jurisdiction, so the Court limits its discussion to whether it has specific personal jurisdiction over it. (*See* ECF 21 at 8.)

"A District Court typically exercises personal jurisdiction according to the law of the state where it sits, in this case Pennsylvania." *Cruickshank-Wallace v. CNA Financial Corp.*, 769 F. App'x 77, 79 (3d Cir. 2019) (citing Fed. R. Civ. P. 4(k)(1)(A)). Pennsylvania's long arm statute provides for jurisdiction over a non-resident defendant like Bobst Mex SA "based on the most minimum contact with [the] Commonwealth allowed under the Constitution." 42 Pa. C.S.A. § 5322(b). "Accordingly, in determining whether personal jurisdiction exists," the Court considers "whether, under the Due Process Clause" Bobst Mex SA "has certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316) (alteration in original).

The foundation of this inquiry is "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The Third Circuit uses a three-part test to analyze whether contacts are sufficient to support the exercise of specific personal jurisdiction, requiring Plaintiff to show that: (1) Bobst Mex SA purposefully availed itself of this forum by purposefully directing its activities here; (2) the litigation arises out of or relates to at least one of Bobst Mex SA's activities in this forum; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317 (internal citations omitted).

## III. DISCUSSION

Although the Court permitted Plaintiff to conduct jurisdictional discovery to explore an alter ego theory of personal jurisdiction, she contends that she "need not rely on any alter ego theory" because Bobst Mex SA's "own conduct subjects it to specific personal jurisdiction in Pennsylvania in this matter." (ECF 48 at 5.) Bobst Mex SA argues that exercise of specific personal jurisdiction is improper because Bobst Mex SA and Bobst North America conducted business as separate entities, and Bobst Mex SA "had no other involvement" with the subject Die-Cutter beyond selling the machine to Bobst North America and delivering it to a port in New York. (ECF 47 at 3.) To the extent that Plaintiff now seeks to establish specific personal jurisdiction over Bobst Mex SA without reference to the alter ego theory, she has not set forth sufficient evidence to establish that Bobst Mex SA has the requisite minimum contacts with Pennsylvania. *See O'Connor*, 496 F.3d at 317 (stating that a defendant's contacts must amount to "a deliberate targeting of the forum").

### A. Bobst Mex SA Does Not Have the Requisite Minimum Contacts with Pennsylvania.

Plaintiff has not shown that Bobst Mex SA purposefully directed its activities at Pennsylvania. *See O'Connor*, 496 F.3d at 317. For the Court to exercise specific personal jurisdiction over Bobst Mex SA, Plaintiff must show "some act by which [Bobst Mex SA] purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Shuker v. Smith & Nephew, PC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987). Physical entrance is not required. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft, Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009). But Bobst Mex SA must not "be haled into [this] jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *O'Connor*, 496 F.3d at 317 (citing *Keeton*, 465 U.S. at 774). "In the specific context of the transmission of goods into a forum, purposeful availment requires [it] to 'have targeted th[is] forum' deliberately." *Martinez v. Union Officine Meccaniche S.P.A.*, 2023 WL 3336644, at *2 (3d Cir. May 10, 2023) (citation omitted). In other words, the Court has specific jurisdiction where a company deliberately cultivates a market for a product in the forum State, although "efforts to exploit a national market that necessarily included Pennsylvania are insufficient" without more. *Shuker*, 885 F.3d at 760; *see D'Jamoos*, 566 F.3d at 104 (explaining that a foreign defendant's connection to Pennsylvania was a "derivative benefit of a successful attempt to exploit the United States as a national market" and thus insufficient for purposeful availment). The Supreme Court has made

clear that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 883 (2011).

Even construed in Plaintiff's favor, the evidence regarding Bobst Mex SA's contacts with Pennsylvania—or lack thereof—does not demonstrate "purposeful availment" or "deliberate targeting" such that the exercise of personal jurisdiction would be proper here. On the present record, Bobst Mex SA has no direct contact with Pennsylvania, including, *inter alia*, no business registration, facilities, employees, banking, mailing, advertising, or sales in the Commonwealth. (ECF 16-5 at ¶¶ 12-24.) Bobst Mex SA does not design, manufacture, or assemble any products in Pennsylvania, nor does it negotiate or execute any contracts in Pennsylvania. (ECF 16-5 at ¶¶ 22-23.) *Cf. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that the purposeful availment inquiry is satisfied where a defendant enters a contractual relationship in the forum State.) Bobst Mex SA only has one customer in North America—Bobst North America. (ECF 47-4 at 11:1-3.)

GPI ordered the Die-Cutter from Bobst North America, which subsequently ordered the machine from Bobst Mex SA. (ECF 47-2 at ¶¶ 1-2.) Bobst Mex SA invoiced Bobst North America $2,970,838.91 for the Die-Cutter, which Bobst North America paid. (ECF 47-2 at ¶¶ 1, 4-5.) Bobst Mex SA shipped the machine to a port in New York, where Bobst North America contracted with a third-party to transport and deliver it to GPI's facility. (ECF 47-4 at 18:3-5.) At no point before, during, or after the sale of the Die-Cutter did anyone from Bobst Mex SA communicate with anyone from GPI. (ECF 47-2 at ¶ 3.) Bobst North America personnel performed service and maintenance on the Die-Cutter,

7

which was billed to Bobst Mex SA under a warranty that Bobst Mex SA issued to Bobst North America.  (ECF 48-9; ECF 47-2 at ¶ 7.)

Plaintiff argues that Bobst Mex SA has purposefully availed itself of Pennsylvania because Bobst Mex SA sent the Die-Cutter "directly" to GPI's Pennsylvania-based facility. (ECF 48 at 7).  More specifically, Plaintiff contends that because Bobst North America was "merely . . . responsible for arranging third-party carriers to transport the Die-Cutter from the port in New York" to GPI's Pennsylvania facility, Bobst Mex SA "sent the Die-Cutter directly."  (ECF 48 at 17, ECF 16-5 at ¶ 32.)  This argument does not allow her to meet her burden.

Directly means "immediately."  *Directly*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directly. (last visited Dec. 5, 2024); *see also Directly*, *Black's Law Dictonary* (12th ed. 2024) (defining "directly" as, *inter alia*, "[i]mmediately").  Immediately means, *inter alia*, "[w]ithout an intermediary or interposed agency; by direct means; in proximate connection" or "[w]ithout someone or something intervening in space, time or order; proximately or directly . . . ." *Immediately*, *Black's Law Dictionary* (12th ed. 2024).  Thus, if Bobst Mex SA had sent the Die-Cutter directly, as Plaintiff alleges, it would have been delivered immediately to GPI's facility, rather than to Bobst North America—an intermediary—via a port in New York to be transported to GPI's Pennsylvania facility by a third-party.  (ECF 47-2 at ¶ 3.); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding that the contact with the forum State must be created by the foreign defendant, as opposed to a third-party).  Instead, Bobst

8

Mex SA's involvement was limited to shipping the Die-Cutter to New York, where Bobst North America took custody.[2]

On the Multi-Modal Shipping Instructions, Bobst North America is listed as the "[c]onsignee," *i.e.*, a party to whom the Die-Cutter was transferred,[3] New York is listed under "Ship to Party," and GPI is noted as the "end-user." (ECF 48-6 at 2-3.) Transportation and delivery of the machine from New York to Pennsylvania was handled separately by a third-party contracted by Bobst North America. (ECF 47-4 at 18:3-5.) In sum, before arriving at GPI's Pennsylvania facility, the Die-Cutter first arrived at a New York port, where Bobst North America took custody of the machine, and then a third-party transported it to Pennsylvania on behalf of Bobst North America. There was no "direct supply line" from Bobst Mex SA to GPI's Pennsylvania facility. (ECF 48 at 17.) Rather, the Die-Cutter made it to Pennsylvania "indirectly via the so-called stream of commerce." *See Shuker*, 885 F.3d at 780 (declining to adopt the stream-of-commerce theory of specific personal jurisdiction).[4]

---

[2] When asked why GPI's Pennsylvania facility is listed on Bobst Mex's shipping invoice, Bobst Mex's corporate designee, Marco Lideo, testified that it was "mandatory to indicate the address of the end-user." (ECF 47-4 at 46:11-14.)

[3] *See Consignee, Black's Law Dictionary* (12th ed. 2024) (defining "consignee" as, *inter alia*, "one to whom goods are consigned"); *see also Consign*, *Black's Law Dictionary* (12th ed. 2024) (defining "consign" as, *inter alia*, "[t]o transfer to another's custody or charge" and "to give (goods) to a carrier for delivery to a designated recipient.")

[4] In her response to Bobst Mex SA's original Motion to Dismiss, Plaintiff argued that the exercise of specific personal jurisdiction is proper under a stream-of-commerce theory. (ECF 21 at 8.) Now she contends that she is "*not* relying on a pure stream-of-commerce theory," but one consistent with Third Circuit precedent, as affirmed in *Shuker*. (ECF 48 at 15-16 (emphasis in original).) However, in *Shuker*, the Third Circuit rejected

Plaintiff attempts to buttress her position by arguing that Bobst Mex SA "exploited the Pennsylvania market" by knowingly designing and manufacturing machines for specific Pennsylvania-based end-users. (ECF 48 at 17-18.) From 2012 to 2022, Bobst Mex SA sold Bobst North America thirty-seven machines that were ultimately delivered to Pennsylvania end-users, including the Die-Cutter and two other machines that GPI ordered. (ECF 47-2 at ¶¶ 14,15.) Plaintiff repeatedly emphasizes that Bobst Mex SA knew these machines would ultimately arrive in Pennsylvania. Bobst Mex SA is aware of a machine's ultimate end-user: every Bobst Mex SA machine is sold to and purchased by Bobst North America—the *only* company selling machines manufactured by Bobst Mex SA in North America. (ECF 47-3 at 15:12-24.) However, Plaintiff fails to provide any caselaw to support her contention that Bobst Mex SA's knowledge of Pennsylvania end-users alone is sufficient evidence of purposeful availment.[5]  "[I]t is the defendant's actions, not [its] expectations, that empower a State's courts to subject [it] to judgment." *J. McIntyre*, 564 U.S. at 882-83. It is not enough that Bobst Mex SA expected the Die-Cutter, or any other machine, to reach Pennsylvania. That Pennsylvania-based end-users have purchased Bobst Mex SA products from Bobst North America does not meet

---

the stream-of-commerce theory, finding that "what is necessary is a deliberate targeting of the forum." 885 F.3d at 780 (citation omitted) (internal quotation marks omitted).

[5] Plaintiff also mentions that Bobst Mex SA generated approximately forty-six million dollars in revenue from sales to Bobst North America that were ultimately delivered to Pennsylvania-based end-users. (ECF 48 at 16.) However, she again neglects to provide any legal or factual support for the suggestion that this revenue is relevant to a purposeful availment analysis. (*Id.*)

Plaintiff's burden to show that Bobst Mex SA itself has purposefully directed its activities at Pennsylvania.

Given Bobst Mex SA's lack of contact with the Commonwealth, it cannot reasonably expect to be "haled into court in [Pennsylvania]." *Walden*, 571 U.S. at 286. A foreign defendant should "reasonably anticipate" litigation where it has availed itself of the privilege of doing business in the forum State, and because its activities are "shielded by the benefits and protections of the forum's laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The record here, on the contrary, merely reflects efforts by Bobst Mex SA "to exploit a national market" by transacting with Bobst North America, not the "deliberate targeting of the forum" that the Third Circuit requires to support specific personal jurisdiction. *Shuker*, 885 F.3d at 780. Moreover, because Bobst Mex SA does not conduct business in Pennsylvania, it is not shielded by any of the benefits or protections of State law. Without evidence of a "strong relationship" between "the defendant, the forum, and the litigation," the Court cannot exercise specific jurisdiction over Bobst Mex SA. *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (citation omitted).

Because Plaintiff has failed to establish that the first prong of the specific jurisdiction analysis is met, the Court need not consider, under the second and third prongs, whether her claims arise out of or relate to at least one of the defendant's activities in the forum and whether exercising personal jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317 (internal citations omitted).

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that it does not have personal jurisdiction over Bobst Mex SA.  Accordingly, Bobst Mex SA's Motion to Dismiss (ECF 47) is GRANTED, Plaintiff's claims against Bobst Mex SA are DISMISSED, and Bobst Mex SA is terminated as a party in this litigation.

An appropriate Order follows.