IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TABRIA MONTGOMERY, | : | |
| Individually and as Administratrix | : | |
| of the ESTATE OF MICHAEL | : | CIVIL ACTION |
| MONTGOMERY, deceased, | : | No. 24-367 |
|     *Plaintiff*, | : | |
|   v. | : | |
| | : | |
| BOBST MEX SA, *et al.* | : | |
|     *Defendant.* | : | |

## <u>MEMORANDUM</u>

**HON. JOSÉ RAÚL ARTEAGA**                                          **April 22, 2026**
**United States Magistrate Judge[1]**

Plaintiff Tabria Montgomery's father, Michael Montgomery,[2] sustained fatal

injuries while operating a Bobst Mastercut 145 PER 2.0 Die-Cutter machine bearing Serial

No. BSA05662000208/1951 ("Mastercut"). (ECF 48 at ECF p. 5; *see also* ECF 58-1 at ¶ 4.)

Following his death, she sued individually on behalf of herself and her father's estate

asserting claims for strict products liability, negligence, wrongful death, and survival

against Defendant Bobst Group North America, Inc. ("Bobst NA"),[3] and against

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 25.)

[2] For clarity, this Opinion refers to Tabria Montgomery as Plaintiff and to Michael Montgomery as Mr. Montgomery.

[3] Although Plaintiff directs her claims against Bobst Group North America, Inc., it contends its "correct corporate name is Bobst North America, Inc." (ECF 17, ¶ 9; *see also* ECF 66-2 at ECF p. 1 ("Defendant Bobst North America, Inc. formerly Bobst Group North America, Inc.").) The Court uses that name for purposes of this Opinion.

Defendant Graphic Packaging International, LLC ("GPI") for negligence, wrongful death, and survival.  (*See* ECF 1-1.)  Relevant here, Bobst NA has raised a crossclaim against GPI for contractual indemnity. (*See* ECF 29.) And GPI asserts crossclaims against Bobst NA for contribution and indemnification.[4] (*See* ECF 44.) Among several motions now pending before the Court, GPI moves for summary judgment in its favor with respect to Plaintiff's and Bobst NA's claims against it.  (ECF 58.)

GPI maintains that the Pennsylvania Workers' Compensation Act ("PWCA") provides Plaintiff's exclusive remedy for any claim that Plaintiff has against it because GPI was Mr. Montgomery's only employer on the day that he died and he sustained his fatal injuries during the course and scope of his employment.  (ECF 58; *see* ECF 58-1 ¶¶ 4-5.)  As a result, GPI argues judgment must be entered in its favor on Plaintiff's claims against it.  (*See* ECF 58; ECF 78.)  Plaintiff has not contested GPI's Motion.  (*See* ECF 78 at 1.)  Because Plaintiff presents no genuine issue for trial with respect to GPI's Motion, the Court grants summary judgment in GPI's favor with respect to her claims against it.

With respect to Bobst NA, GPI maintains that Pennsylvania law governs Bobst NA's contractual indemnification crossclaim against it and the PWCA precludes this claim, too. (*See* ECF 58-3 at 15-23.) Bobst NA responds that GPI's construction of the facts regarding the agreement between them at "minimum" demonstrates that there is a genuine dispute as to the material facts regarding its contractual indemnification crossclaim against GPI.  (ECF 74.)  The Court grants GPI's Motion for Summary Judgment

---

[4] GPI has withdrawn any claim for contractual indemnification.  (ECF 73 at 2.)

with respect to Bobst NA's crossclaims against it. The PWCA bars any contractual indemnification claim that Bobst NA could have against GPI, and Bobst NA's other crossclaim has been abandoned.[5]

## I.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As the movant, GPI bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where a nonmoving party (here, Plaintiff and Bobst NA, respectively) bears the burden of proof on a particular issue, GPI's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once GPI meets its initial burden, the nonmoving party (Plaintiff or Bobst NA) must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in

---

[5] Although Bobst pled a crossclaim against GPI for implied indemnity and contribution in Count I of its Amended Crossclaims, Bobst's response to GPI's Summary Judgment Motion does not address GPI's argument that Count I of Bobst's Amended Crossclaims provides no basis for relief.  As a result, GPI is entitled to summary judgment with respect to this crossclaim. *See Kluender v. United States Liab. Ins. Co.*, No. 22-3650, 2025 WL 886949, at *4 (E.D. Pa. Mar. 21, 2025) ("Where a [party] fails to address a claim in their opposition to a summary judgment motion, it is proper for the Court to grant summary judgment on that issue."), *aff'd*, No. 25-1750, 2026 WL 674215 (3d Cir. Mar. 10, 2026); *Phillip v. GEO Secure Servs., LLC*, No. 22-565, 2024 WL 2383923, at *7 (E.D. Pa. May 23, 2024) (granting summary judgment with respect to a claim that a party had "abandoned" where it did not address the claim "at all" in its opposition to the motion).

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed R. Civ. P. 56(c).

The Court may consider any material in the record that may be admissible at trial. *See id.*; *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387-88 & n.13 (3d Cir. 1999).  In doing so, the Court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Nor may the Court make credibility determinations or weigh the evidence.  *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence supporting the nonmoving party will not suffice to defeat summary judgment. *Id.* at 252. Rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

Where, as in this case, there are competing motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

## II.   PLAINTIFF'S CLAIMS AGINST GPI

### A.   Relevant Background: GPI Was Mr. Montgomery's Employer.

Previously, GPI moved to dismiss Plaintiff's negligence, wrongful death, and survival claims against it, arguing that it was Mr. Montgomery's employer and the PWCA's preemption provision, 77 P.S. § 481(a), barred any tort action against it for Mr. Montgomery's on-the-job fatality. (*See* ECF 11.) The Court denied GPI's Motion to Dismiss Plaintiff's claims against it because it was "not apparent" from the face of the Complaint whether GPI was Mr. Montgomery's employer.[6]  (ECF 39 at 10.)

Now, it is undisputed that GPI employed Mr. Montgomery as a cutter operator on the Mastercut at GPI's facility in Phoenixville, Pennsylvania, when he was fatally injured in the course and scope of his employment on February 6, 2022. (ECF 58-1 ¶¶ 1-8.) Mr. Montgomery had no other employer at the time.  (*Id.* ¶ 5.)

Identifying "Graphic Packaging International, LLC, as Mr. Montgomery's employer, the U.S. Department of Labor Occupational Safety and Health Administration ("OSHA") opened an investigation into the circumstances of Mr. Montgomery's death on February 7, 2022.  (*Id.* ¶ 10-11.)  OSHA served "Graphic Packaging International, LLC" a subpoena seeking, among other things, "documents related to training given to 'employees.'" (*Id.* ¶ 13.)  OSHA and "Graphic Packaging International, LLC" eventually

---

[6] The Court also denied GPI's Motion to Dismiss Bobst's Amended Cross-Claims against it based on the PWCA's exclusive remedy provision because the issue of whether GPI was Mr. Montgomery's employer remained "an open question" that could not be decided absent further development of the record.  (ECF 41 at 10.)

entered into an Informal Settlement Agreement regarding violations issued as a result of the circumstances leading to Mr. Montgomery's death. (*Id.* ¶ 14.)  The Informal Settlement Agreement identifies "Graphic Packaging International, LLC as "Employer." (*Id.* ¶ 15.) OSHA later sent a letter to "Graphic Packaging International, LLC" bearing the salutation "Dear Employer" to follow up on corrective actions that the Informal Settlement Agreement required.  (*Id.* ¶ 16.)

As Mr. Montgomery's employer, GPI paid Pennsylvania workers' compensation benefits to Mr. Montgomery's estate on or about September 16, 2022: a $7,000 reimbursement for funeral costs.  (*Id.* ¶ 9.)

### B.    Summary Judgment in GPI's Favor is Appropriate with Respect to Plaintiff's Claims Against It.

The PWCA is the sole means through which an injured employee (or their estate) can collect damages for an injury or death sustained during employment.  77 P.S. § 481(a). Under the statute, "a tort action by an employee against his employer for '*any* work-related injury' [is] barred." *Poyser v. Newman & Co.*, 522 A.2d 548, 550 (Pa. 1987) (emphasis in original) (quoting *Kline v. Arden H. Verner Co.*, 469 A.2d 158, 160 (Pa. 1983)). Accordingly, "courts have been very cautious about permitting common law litigation in matters arguably connected with work-related injuries." *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 322 (3d Cir. 1995). "In exchange for the right to compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment."  *Hancuff v. Prism Techs. & Assemblies, LLC*,

357 F. Supp. 2d 828, 831 (W.D. Pa. 2005) (quoting *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa. Super. Ct. 2000) (further citations omitted)).

GPI's summary judgment Motion is unopposed by Plaintiff because the response deadline has lapsed, and Plaintiff has not filed one. "In the absence of a timely response, the motion may be granted as uncontested except as provided under Federal Rule of Civil Procedure 56, or otherwise prohibited by law." E.D. Pa. Loc. R. Civ. P. 7.1(c). Nevertheless, Plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990). The Court "still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021). However, by her non-response, Plaintiff "waives the right to respond to or to controvert the facts asserted in the summary judgment motion." *B&B Fin. Servs. LLC v. Kallock*, No. 05-1277, 2006 WL 2869529, at *1 (E.D. Pa. Oct. 4, 2006) (citation modified); *see* Fed. R. Civ. P. 56(e)(2)-(3) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .").

Because there is no genuine dispute that GPI employed Mr. Montgomery and that he died in the course and scope of his employment, the PWCA provides the exclusive remedy for Plaintiff's claims against GPI. So, GPI is immune from Plaintiff's claims against it under the PWCA, and summary judgment is required in its favor with respect

to Counts III (Negligence), IV (Wrongful Death), and V (Survival) of Plaintiff's Complaint.

### III.    BOBST'S CROSSCLAIM AGINST GPI

#### A.    Relevant Background: GPI's Purchase of the Mastercut

In pleading its crossclaims, Bobst NA bases its contractual indemnity crossclaim against GPI on a "Purchase Agreement" for GPI's purchase of the Mastercut. (ECF 29 ¶¶ 12-20.) It maintains that if the allegations of Plaintiff's Complaint against GPI are determined to be true, then GPI is "liable over to" it for contractual indemnity. *(Id.)*

The document that underlies Bobst's claim is an unsigned September 6, 2019 Purchase Agreement between Bobst NA as "Seller" and GPI as "Buyer," alternatively identified as Proposal No. 190722BR1 (the "Proposal/Purchase Agreement"). (ECF 58-2 at JA 30-55.)  Section 12 of the General Terms and Conditions in the Proposal/Purchase Agreement is a "Limitation of Liability, Safety and Indemnification" provision.  With the relevant party and equipment names substituted for the generic terms used in the document, it states, in relevant part, that:

> In no event shall Seller [(Bobst NA)] be liable to Buyer [(GPI)], or to Buyer's officers, employees or representatives, or to any third party, for any special, indirect, incidental or consequential damages . . . .  [GPI] assumes all risks and liabilities for any loss, damage or injury to persons . . . arising out of, connected with or resulting from the use . . . of the [Mastercut], either alone or in combination with other products.  [GPI] expressly agrees that the remedies granted to it in this Agreement are [GPI]'s sole and exclusive remedies with respect to any claim of [GPI] arising under and/or related to the [Mastercut] and this Agreement.  During the life of the [Mastercut], [GPI] agrees to provide to all [Mastercut] users (including its own employees and independent contractors) all of [Bobst NA's] safety information as contained in warnings, instructions and owner's manuals, and to adequately train all users in the safe use and maintenance of the

[Mastercut] including, but not limited to, use of safety features of the [Mastercut] such as guards and interlocks. [GPI] agrees to defend, indemnify and hold [Bobst NA] harmless from and against all claims, losses, damages, liabilities and expenses (including reasonable attorneys' fees) to the extent that they relate to or have been caused by [GPI]'s failure to comply with the provisions of this Agreement or [GPI]'s negligence.

(*Id.* at JA 52.)

Paragraph 15 of the Proposal/Purchase Agreement provides, in relevant part, that:

Any controversy or dispute between the parties shall be governed by and construed in accordance with the laws of the State of New Jersey and, unless an alternative jurisdiction is selected by [Bobst NA], shall be adjudicated exclusively in the State Courts of the State of New Jersey. Unless [Bobst NA] selects a different jurisdiction, [GPI] consents to the exclusive jurisdiction of the State Courts of the State of New Jersey.

(*Id.*)

Pursuant to Section 17 of the Proposal/Purchase Agreement, "[a]n authorized officer of [Bobst NA] must accept the offer [to buy from GPI] in writing in order to create a binding agreement." (*Id.* at JA 53.) Section 17 also provides that Bobst NA's acceptance "is expressly made conditional on [GPI]'s acceptance of the terms and conditions contained in [the Proposal/Purchase Agreement] and no others," "[u]nless otherwise specifically agreed in writing by the parties." (*Id.*) It adds that Bobst NA's "failure at any time to insist upon strict performance of any term or condition of this Agreement shall not be construed as a waiver of any subsequent breach of any term or condition." (*Id.*)

On summary judgment, the record shows that GPI submitted Purchase Order No. 4505129526 to "vendor" "Bobst Group Inc" in Atlanta, Georgia, on September 12, 2019, for a "Mastercut 145 PER 2.0 Autoplaten" "as described in Proposal 190722BR1 dated September 8, 2019 for scope and pricing." (ECF 58-2 at JA 28 (capitalization omitted); *see*

9

*also* ECF 75 ¶ 17.) The Purchase Order in the parties' Joint Appendix on Summary Judgment is two pages long, states that "GPI/Bobst negotiated terms are attached and apply," and bears this note at the bottom of page two: "instructions to [Bobst NA]: the clauses printed on the attachment hereof and any supplemental conditions attached hereto are essential terms of this order." *(Id.* at JA 28-29 (capitalization omitted).) Nevertheless, the document presented on summary judgment includes no separate "attached terms" and bears a header suggesting the original document was three pages long instead of two.  (*See id.*)

An undated email from Samantha Kunz for Bobst NA to Chris Hartenbach for GPI stated that Bobst NA had received GPI's "Purchase order No. 4505129526 Change No. 2 for the Mastercut" and asks GPI to "update" the Purchase Order with the following provision "consistent with the last machines ordered by GPI":

> It is agreed that any pre-printed clauses regarding terms and/or conditions contained on this Purchase Order shall be deleted in their entirety and replaced by the following clause: "It is understood and agreed that the General Terms and Conditions dated October, 2009, (the "Master Terms"), are the terms that have applied to the most recent purchase orders issued by Graphic Packaging to Bobst for machinery purchases and that such Master Terms shall exclusively govern this Purchase Order."

*(Id.* at JA 27.) The undated email includes handwritten initials from two unidentified individuals, both dated November 25, 2019. (*Id.*) No other evidence in the summary judgment record addresses Bobst NA's requested update to the governing terms, and no copy of the October 2009 "Master Terms" is before the Court.  (*See* ECF 78 at 6.)

Bobst NA confirmed GPI's order for the Mastercut on January 16, 2020.  (ECF 58-2 at JA 24; ECF 58-1 ¶ 17; ECF 75 ¶ 17.)  The Order Confirmation document states only

10

that GPI's order is confirmed "subject to" Bobst NA's "General Conditions of Sale" without providing further specifics about what those are.  (ECF 58-2 at JA 24.)

In a Commissioning Certificate signed by GPI on July 21, 2020, and by Bobst on May 13, 2020, GPI and Bobst "mutually declare[d] that Commissioning of the [Mastercut] was achieved on [April] 10, 2020." *(Id.* at JA 57.)  "Commissioning" was defined to include the supply, successful installation, and startup of the Mastercut, with proper working mechanical and electrical functions and the capacity to produce "commercially saleable product," and "basic instruction, according to the instruction manual of the [Mastercut] ha[ving] been given to [GPI's] operators and maintenance staff."  *(Id.*)

### B. Summary Judgment in GPI's Favor is Appropriate with Respect to Bobst NA's Claims Against It.

Under Section 303(b) of the PWCA a third party—here, Bobst NA— may not "seek contribution or indemnity from [an injured plaintiff's] employer,"—GPI—"even though the employer's own negligence may have been the primary cause of the injury."  *Tsarnas v. Jones & Laughlin Steel Corp.*, 412 A.2d 1094, 1096 (Pa. 1980); *see also Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 101 (3d Cir. 1984) ("The employer . . . has been given immunity from certain claims by third parties."). It provides, in relevant part, that an employer, *i.e.*, GPI, "shall not be liable to a third party," *i.e.*, Bobst NA, "for damages, contribution, or indemnity [for injury or death to an employee] in any action at law, or otherwise, unless liability for such damages, contributions, or indemnity shall be *expressly* provided for *in a written contract* entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action."  77 P.S. § 481(b) (emphasis added).

11

GPI argues that the PWCA bars Bobst NA's contractual indemnity crossclaim against it. (*See* ECF 58-3 at 10.)  Bobst maintains that its cross-claim may proceed because New Jersey law governs it under the choice of law provision in the Proposal/Purchase Agreement, meaning that GPI cannot benefit from any immunity that the PWCA would provide. (ECF 74 at 7.)

GPI contends that the unsigned Proposal/Purchase Agreement, including its choice of law provision is unenforceable under the Pennsylvania Statute of Frauds. (ECF 58-3 at 11.)  Pennsylvania's Statute of Frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought.*" 13 Pa. C.S.A. § 2201(a) (emphasis added). "To satisfy the statute of frauds, there must be a signed memorandum which demonstrates an intent to be bound by the agreement." *JML Indus., Inc. v. Pretium Packaging, LLC,* No. 04-2552, 2005 WL 8168233, at *4 (M.D. Pa. Jan. 14, 2005).

Bobst NA responds that "there can be no question that the parties had a valid contract for the sale of the" Mastercut. (ECF 74 at 6.) It explains that "[n]ot only do the parties have the [Proposal/]Purchase Agreement, Purchase Order, Order Confirmation, and Signed Commissioning Certificate," but also "there is no question that the parties performed pursuant to the contract for sale," which shows their "intent to be bound." (*Id.*)  Bobst NA argues that "it is well settled that where there is part performance of an indivisible contract, the entire contract is removed from the statute of frauds." (*Id.*) *See JML Indus.,* 2005 WL 8168233, at *4. Moreover, "where the party invoking the statute of

frauds has benefitted from partial performance, that party may be barred from invoking such a defense." *Id.* (citing *In re Est. of Brojack*, 467 A.2d 1175, 1182 (Pa. Super. Ct. 1983)).

To decide whether summary judgment is appropriate, the Court need not decide whether the unsigned Proposal/Purchase Order is a valid, enforceable contract with terms—including the New Jersey choice of law provision—that bind GPI and Bobst NA. Even assuming that it is one, Pennsylvania law would still apply to—and bar—Bobst NA's contractual indemnification cross-claim. Because the Court's subject matter jurisdiction is based on diversity, 28 U.S.C. § 1332(a), Pennsylvania's choice of law rules apply: it is the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). In general, Pennsylvania law "honor[s] the intent of the contracting parties and enforce[s] choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994); *see Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007). But there are exceptions. Section 187 of the Restatement, Second, Conflict of Laws, which Pennsylvania follows, provides that a contractual choice of law provision will be given effect *unless*: (1) the state whose law the contract specifies has no substantial relationship with the parties; or (2) application of the chosen state law would be contrary to the policy of the state having a materially greater interest. *See Kruzits*, 40 F.3d at 55.

GPI argues that Pennsylvania "has a materially greater interest" than New Jersey in the outcome of its claim because "the accident occurred in Pennsylvania, the decedent was a Pennsylvania resident, and GPI paid workers' compensation benefits to the decedents' estate." (ECF 78 at 5.) *See Watson v. Allied Tube & Conduit Corp.*, No. 15-1770, 2016 WL 11698042, at *5 (E.D. Pa. Sept. 9, 2016). It also contends that applying New Jersey

13

law here "would be contrary to Pennsylvania public policy." (ECF 58-3 at 13.)  Bobst NA

counters that the contractual indemnification provision in the Proposal/Purchase

Agreement does "not infringe on any Pennsylvania public policy" and was a "freely

negotiated contract between two commercial entities." (ECF 74 at 9.)  It argues that GPI

is incorporated in Delaware, not in Pennsylvania, while Bobst NA is a New Jersey

corporation with its principal place of business in New Jersey, giving New Jersey a

greater interest in the outcome than Pennsylvania. *(Id.* at 7-8.) It complains that even

though GPI agreed to perform under New Jersey law, and chose not to incorporate in

Pennsylvania, it "now seeks to exploit the benefits of Pennsylvania law and the immunity

provided by the PWCA."[7] (*Id.* at 8.) New Jersey has at least some relationship with the

parties, so the first exception provided in Section 187 of the Restatement, Second, Conflict

of Laws does not apply. However, the second exception does.

Bobst NA argues that here, like in *Kruzits*, "no strong public policy issues would

be infringed by enforcement of the choice of law and indemnification provisions of the

contract." (ECF 74 at 9.) But, as GPI explains, *Kruzits* is distinguishable for the same

reasons that the Court distinguished it in *Bookard v. Estee Lauder Cos.*, 443 F. Supp. 3d 561,

572 n.5 (E.D. Pa. 2020). (*See* ECF 78 at 4.) In *Kruzits*, the Court recognized that

"Pennsylvania has a *strong interest* in protecting the terms of the PWCA." 40 F.3d at 55

(emphasis added).  It explained, however, that the plaintiff made "no claim" that the third

---

[7] As a sophisticated commercial entity with an understanding that the Mastercut would be installed in Pennsylvania, Bobst NA could have negotiated contract terms explicitly requiring GPI to waive any immunity under the PWCA, but it did not.

party seeking to enforce an indemnification provision pursuant to an Illinois choice of law provision "caused his personal injury" and the litigation had "no effect on the employer's rights and obligations under the PWCA." *Id.* at 56. The injured employee underlying the litigation had not sued his *employer*, but, instead, sued a manufacturer of equipment that allegedly caused his injuries in addition to the company who financed, but did not operate, the equipment. *Id.* at 54. Ultimately, the Court issued a narrow holding, finding that "under Pennsylvania choice of law rules, [a] contractual choice of law provision[ ] contained in a financial agreement that enable[d] an employer to purchase plant equipment is binding on the parties." *Id.* at 56.

In *Bookard*, the Court distinguished *Kruzits,* explaining that the plaintiff alleged that "her injuries were a direct and proximate result of [the third party's] careless and negligent conduct," which brought the "case within the immunity provision of the [PWCA]." *Bookard*, 443 F. Supp. 3d at 572 n.5.  Here too, Plaintiff has specifically alleged that Bobst's negligence was the proximate cause of her injury. (*See* ECF 1-1 ¶¶ 101-03.) As the Court explained in *Bookard*, "Pennsylvania . . . has a substantial interest in determining whether immunity has been waived," as "[t]he immunity conferred upon an employer by the [PWCA] is a fundamental component of the workers' compensation system." 443 F. Supp. 3d at 572. Immunity under the PWCA "is the historical quid pro quo that employers received in return for being subjected to a statutory, no-fault system of compensation for worker injuries." *Id.* (citation modified). That is why the Court can "override" a contractual choice of law provision "when an employee's injury happens in

15

Pennsylvania and the employer invokes Pennsylvania's Workers' Compensation Act." *Jones v. Swepi L.P.*, No. 19-50, 2020 WL 241009, at *3 (W.D. Pa. Jan. 16, 2020).

As compared to New Jersey, "Pennsylvania has a materially greater interest in protecting workers within its boundaries." *Finney v. CSX Transp., Inc.*, No. 09-3040, 2009 WL 3719382, at *2 (E.D. Pa. Nov. 5, 2009). The PWCA expressly applies "to all workers injured *in* Pennsylvania," as is the case here. *Id.* at *3; *see* 77 P.S. § 1 (providing that the PWCA "shall apply to all injuries occurring within this Commonwealth, irrespective of the place where the contract of hiring was made, renewed, or extended"). As the Court held in *Finney*, "[a] choice of law provision that imposes another state's law that conflicts with provisions of the [PWCA] offends public policy where the injury occurred in Pennsylvania." 2009 WL 3719382, at *2 (citing *McIlvaine Trucking, Inc. v. Workers' Comp. Appeal Bd.*, 810 A.2d 1280, 1286 (Pa. 2002)); *see also Bookard*, 443 F. Supp. 3d at 570 (recognizing Pennsylvania's "fundamental policy interest in applying its Workers' Compensation Act to in-state injuries"). So, overriding the New Jersey choice of law provision in the Proposal/Purchase Order, Pennsylvania law appropriately governs when determining whether GPI is immune from Bobst NA's claim for contractual indemnity or whether it has waived its immunity.

As Bobst NA is the party seeking indemnification, it bears the burden of proving that the indemnity provision in the Proposal/Purchase Order applies to provide the immunity it seeks. *See Snare v. Ebensburg Power Co.*, 637 A.2d 296, 298-99 (Pa. Super. Ct. 1993). In the context of the PWCA, indemnification agreements "are not favored in the law and every intendment must be construed against the party seeking protection from

liability or indemnification from the employer." *Id.* For Bobst NA's contractual indemnity cross-claim to proceed, GPI and Bobst NA must have "specifically use[d] language which demonstrates that [GPI] agrees to indemnify [Bobst NA] from liability for acts . . . which result in harm to the employees of [GPI]." *Bookard*, 443 F. Supp. 3d at 573 (quoting *Bester v. Essex Crane Rental Corp.*, 619 A.2d 304, 308-09 (Pa. Super. Ct. 1993)). The PWCA's indemnity provision "must be construed strictly, and general indemnity language such as 'any or all' or 'any nature whatsoever' is insufficient" to establish the express written waiver required under Section 303(b). *Bester*, 619 A.2d at 307 (quoting *Pittsburgh Steel Co. v. Patterson–Emerson–Comstock, Inc.*, 171 A.2d 185 (Pa. 1961)); *see* 77 P.S. § 481(b).

The Limitation of Liability, Safety and Indemnification provision in Section 12 of the Proposal/Purchase Order does not meet this bar. It provides that:

> Buyer agrees to defend, indemnify and hold Seller harmless from and against all claims, losses, damages, liabilities and expenses (including reasonable attorneys' fees) to the extent that they relate to or have been caused by Buyer's failure to comply with the provisions of this Agreement or Buyer's negligence.

(ECF 58-2 at JA 52.)  This is "plainly insufficient, under Pennsylvania law," to show that GPI agreed to indemnify Bobst NA for claims by GPI's own employees. *Bookard*, 443 F. Supp. 3d at 574. The "provision lacks specific language demonstrating an intent to indemnify against claims by the *indemnifying* party's own employees." *Id.* (emphasis in original); *see Finney*, 2009 WL 3719382, at *4 (finding language in an indemnity clause that was "general and not specific" and referred to "any person" and "any and all claims" was not sufficient to "specifically waive immunity under Pennsylvania law").  Indeed, in

its Response to GPI's Motion, Bobst NA does not argue that the provision contains the required level of specificity. (*See* ECF 74.)

Bobst NA cannot seek indemnification from GPI for Plaintiff's claims pursuant to the terms of the Proposal/Purchase agreement.  Summary judgment is required in GPI's favor with respect Bobst NA's contractual indemnification crossclaim.

## IV.    CONCLUSION

The Court **GRANTS** GPI's Motion for Summary Judgment with respect to Plaintiff's claims against it. As it is uncontested that GPI was Mr. Montgomery's employer, there is no question for a jury with respect to whether the PWCA preempts her claims against it: they are barred by the PWCA's statutory preemption provision, 77 P.S. § 481(a).  The Court also **GRANTS** GPI's Motion for Summary Judgment with respect to Bobst NA's crossclaims against it. Any contractual indemnification claim that Bobst could have against GPI is barred by the PWCA, and Bobst NA's other cross-claim has been abandoned. [8]

An appropriate Order follows.

---

[8] Summary judgment in GPI's favor based on the defense of PWCA preemption does not equate to a finding with respect whether GPI was or was not negligent.

18