**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TABRIA MONTGOMERY, | : | |
| **Individually and as Administratrix** | : | |
| **of the ESTATE OF MICHAEL** | : | **CIVIL ACTION** |
| **MONTGOMERY, deceased,** | : | **No. 24-367** |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| **BOBST MEX SA,** *et al.,* | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**HON. JOSÉ RAÚL ARTEAGA**                                                    **May 1, 2026**
**United States Magistrate Judge[1]**

Plaintiff Tabria Montgomery's father, Michael Montgomery,[2] sustained fatal injuries while operating a Bobst Mastercut 145 PER 2.0 Die-Cutter machine bearing Serial No. BSA05662000208/1951 ("Mastercut").  (ECF 48 at ECF p. 5; *see also* ECF 58-1 ¶ 4.)  She asserts claims individually on behalf of herself and her father's estate against Defendant Bobst Group North America, Inc. ("Bobst NA"),[3] for strict products liability, negligence,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c).  (*See* ECF 26.)

[2] For clarity, this Opinion refers to Tabria Montgomery as Plaintiff and to Michael Montgomery as Mr. Montgomery.

[3] Although Plaintiff directs her claims against Bobst Group North America, Inc., it contends its "correct corporate name is Bobst North America, Inc."  (ECF 17 ¶ 9; *see also* ECF 66-2 at ECF p. 1 ("Defendant Bobst North America, Inc., formerly Bobst Group North America, Inc.").)  The Court uses that name for purposes of this Opinion.

wrongful death, and survival.[4] (*See* ECF 1-1 at ECF p. 7-36.) This Opinion considers Plaintiff's motion seeking to exclude the opinions of Bobst NA's expert Alfred P. Bowles II, M.D., one of several motions to exclude expert testimony. (ECF 62.) Upon review of the record and the parties' arguments, her Motion is denied for the following reasons.

## I.    BACKGROUND

As Bobst NA's expert, Dr. Bowles offers his "opinions of the injury mechanisms involved in the incident" that resulted in Mr. Montgomery's death. (Bowles Report at 1.)[5] Dr. Bowles opines that Mr. Montgomery "sustained fatal injury because of overwhelming chest compression leading to fatal mechanical asphyxia" and that, based on a description of the Mastercut's mechanical activity, "overwhelming chest pressure would have been

---

[4] Plaintiff also asserted claims against Defendant Graphic Packaging International, LLC ("GPI"), for negligence, wrongful death, and survival (*see* ECF 1-1 at ECF p. 7-36), but GPI moved for summary judgment (ECF 58) and Plaintiff presented no genuine issue for trial with respect to her claims against it, so the Court granted GPI's motion for summary judgment as to those claims. (ECF 135; ECF 136.)

In addition, Bobst NA and GPI asserted crossclaims against each other seeking contribution and/or indemnification. (*See* ECF 29; ECF 44). Bobst NA's crossclaims against GPI have been dismissed pursuant to the Pennsylvania Workers' Compensation Act. (*See* ECF 135; ECF 136.)

[5] The Bowles Report is available in the record at Plaintiff's Exhibit E (ECF 62-3 at ECF p. 43-51), and at Bobst NA's Exhibit A. (ECF 76-1.) Dr. Bowles' *curriculum vitae* is found in the record at Plaintiff's Exhibit F (ECF 62-3 at ECF p. 52-60) and at Bobst NA's Exhibit B. (ECF 76-2.)

Dr. Bowles' opinions will be offered in rebuttal to the testimony of Plaintiff's expert Wayne K. Ross, M.D., P.C., a forensic pathologist retained to offer opinions on the circumstances surrounding Mr. Montgomery's death, including the cause of death and the extent, if any, of his conscious pain and suffering. (*See* Ross Report (ECF 64-3 at ECF p. 1-12 and ECF 71-1 at ECF p. 11-22).)

applied in less than 1 to 2 seconds," producing "an immediate cessation of cardiopulmonary dynamic activity." (Bowles Report at 7.) He also opines that "Mr. Montgomery would not have remained conscious and aware of his situation after the expected syncopal episode associated with interruption of pulsatile blood flow due to the chest crush." (*Id.*)

Dr. Bowles has a Bachelor of Science in mechanical engineering and is a Doctor of Medicine who was a licensed physician for over twenty-five years in the fields of general medicine and general surgery. (*See* Bowles CV at 1-3.) He served in the United States Air Force Reserve for twenty-one years as a credentialed general surgeon and flight surgeon. (*Id.* at 3.) He is also an accredited traffic accident reconstructionist. (*Id.* at 4.) He received post-graduate education in trauma medicine, accident reconstruction, and biomechanics applied to the investigation of impact trauma. (*Id.* at 1-2.) In addition, since 1995, he has been employed as a consultant. (*Id.* at 2.) In his consulting practice, Dr. Bowles has focused "on understanding how traumatic injuries occur because of physical exposure to forces, accelerations and external stresses that apply to victims in vehicle crashes, transportation mishaps, workplace incidents and equipment malfunctions." (ECF 76 at 2-3 (citing Bowles Report at 1).) He explains that he has "analyzed the biomechanics of injury associated with more than 3,500 injury accidents." (Bowles Report at 1.)

## II.    LEGAL STANDARD

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596

(1993); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017). Consistent with this, "[t]he [Federal] Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). So, "Rule 702, which governs the admissibility of expert witness testimony, has a liberal policy of admissibility." *Id.*

"Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A witness qualified to provide expert testimony is permitted to give testimony that would otherwise be impermissible, if the proponent of the qualified expert shows by a preponderance of the evidence that (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," (2) "the testimony is based on sufficient facts or data," (3) "the testimony is the product of reliable principles and methods," and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and ha[s] been satisfied with more generalized qualifications." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). A "broad range of knowledge, skills, and training qualify an expert." *Id.* "It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244 (citation modified); *see also Holbrook v. Lykes*

4

*Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir.1996) (holding that a treating physician did not have to practice a particular specialty to testify concerning certain matters). "Practical experience as well as academic training and credentials" may be the basis of an expert witness' qualification. *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).

To be reliable, an "expert does not have to be right." *United States v. Anderson*, 171 F.4th 232, 236 (3d Cir. 2026). Reliability is a "lower" bar "than the merits standard of correctness." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999). A reliable opinion need not have "the best foundation" or even be "supported by the best methodology or unassailable research." *Karlo*, 849 F.3d at 81. It cannot, however, be based "on subjective belief and unsupported speculation." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d Cir. 2020).

An expert's opinion "fits" when it is more likely than not that it will help the trier of fact with respect to the questions in the case at hand, a question that "goes primarily to relevance." *Daubert*, 509 U.S. at 591.

## III.   DISCUSSION

Plaintiff contends that "Dr. Bowles is not sufficiently qualified to offer his opinions regarding cause and manner of death and the duration of conscious pain and suffering."[6] (ECF 62-1 at 3.) She does not challenge his opinions based on their reliability or fit. She complains that he is not a forensic pathologist, and in her view, he would need

---

[6] The Pennsylvania Survival Act governs when an estate may recover for pain and suffering allegedly suffered by the estate's decedent and allows recovery for conscious pain and suffering from time of injury until death. 42 Pa. C.S.A. § 8302.

"experience, training, education, and qualifications related to forensic pathology or determining the duration of conscious pain and suffering" to be qualified to offer his proffered opinions. (*Id.* at 5.) In response, Bobst NA argues that "Dr. Bowles' decades of experience as a licensed physician and a consultant provide him with the requisite experience, training, education, and qualifications to offer opinions regarding the manner of death and the degree of conscious pain and suffering" that Mr. Montgomery experienced. (ECF 76 at 3.) Bobst NA is correct.

Plaintiff criticizes Dr. Bowles because he has never "been qualified as an expert in forensic pathology[,] . . . performed an autopsy, [or] . . . been responsible for determining manner of death or duration of conscious pain and suffering in any actual practice." (ECF 62-1 at 7.) She objects to his qualifications because he "has never published, presented, or lectured in the field of forensic pathology or on issues related to manner of death and the duration of conscious pain and suffering" and has "never taken any continuing education courses or education in these fields." (*Id.*) Plaintiff, however, cites no decisions which would require Dr. Bowles to be a forensic pathologist to provide the expert testimony that he seeks to offer. To the contrary, an expert need not have a particular medical specialty to qualified to testify as to the cause of Mr. Montgomery's death or the duration of any conscious pain and suffering that he may have experienced. *See Pineda,* 520 F.3d at 244. Indeed, it has been held that even "[a] medical degree is not a prerequisite to qualification as an expert capable of testifying as to the cause of a person's injuries." *Pa. Tr. Co. v. Dorel Juv. Grp., Inc.,* 851 F. Supp. 2d 831, 838 (E.D. Pa. 2011) (allowing a biomechanical engineer to testify to the cause of a brain injury).

Plaintiff's contention that Dr. Bowles is not qualified to render the offered opinions because he is "primarily, a biomechanics expert" and not a forensic pathologist founders under the Third Circuit's liberal construction of Rule 702. (ECF 62-1 at 7.)  While the Third Circuit has established "a floor with respect to an expert witness's qualifications," Dr. Bowles' qualifications rise above the floor.  *Elcock v. Kmart Corp.*, 233 F.3d 734, 742 (3d Cir. 2000). Although Plaintiff posits that the circumstances are analogous, allowing Dr. Bowles to offer his opinions would not be equivalent to allowing a tractor sales representative who "was not an engineer, lacked experience in designing construction machinery, had no experience in determining the cause of equipment fire, no training as a mechanic," and no experience operating a similar tractor to testify regarding the cause of a tractor fire. (ECF 62-1 at 6-7.) *See Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987). As Bobst NA explains, Dr. Bowles has "over twenty-four years of experience in the fields of general surgery, general medicine, and emergency medicine." (ECF 76 at 6.) At his deposition, he testified that whenever a patient under his care died—"on a number of occasions"—he was "required to submit a report of death that indicates the cause." (Bowles Dep. at 9, ECF 76-3 at ECF p. 3.)[7] Dr. Bowles also testified that he has worked as a litigation consulting expert on "more than 3[,]500" cases.  (Bowles Dep. at 18, ECF 76-3 at ECF p. 7.) He explained that "probably 65 percent" of the work he has done as an expert has been in the context of "surface transportation crashes," while

---

[7] Because Plaintiff and Bobst NA append different excerpts from Dr. Bowles' deposition testimony to their respective filings, citations to his deposition may be to pages from Plaintiff's Exhibit G (ECF 62-3 at ECF p. 61-72) or Bobst NA's Exhibit C.  (ECF 76-3.)

"[p]robably about 10 percent" has been in the context of "workplace injuries involving equipment or machines." (Bowles Dep. at 12-13, ECF 62-3 at ECF p. 68-69.) Dr. Bowles also testified that he has previously provided professional expert opinions in litigation matters regarding the duration of conscious pain and suffering. (Bowles Dep. at 11-12, ECF 76-3 at ECF p. 4-5.) Explaining further, he testified that "the duration of conscious activity . . . is where my work starts and ends, with the understanding that once your conscious activity has ended, then you're no longer able to perceive or process . . . the thoughts or the feelings of . . . pain." (Bowles Dep. at 13, ECF 62-3 at ECF p. 69.) He explained that in the cases that he has worked on, "usually there is some allegation that relates to something or a concept that is like pain or suffering." (Bowles Dep. at 13-14, ECF 62-3 at ECF p. 69-70.)

Given his experience and training, Dr. Bowles satisfies the liberal standards for expert qualification even if he is not the most qualified expert to opine on the subjects at issue.

## IV.    CONCLUSION

Plaintiff's motion to exclude Dr. Bowles' expert opinions is DENIED for the reasons explained above. Ultimately, her concerns with Dr. Bowles' qualifications go to the weight that the jury should afford to his opinions: a matter to be determined at trial.

An appropriate Order follows.