IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TABRIA MONTGOMERY, Individually and as Administratrix of the ESTATE OF MICHAEL MONTGOMERY, deceased,** *Plaintiff,* | : | **CIVIL ACTION No. 24-367** |
| **v.** | : | |
| **BOBST MEX SA,** ***et al.*****,** *Defendants.* | : | |

**MEMORANDUM**

**HON. JOSÉ RAÚL ARTEAGA** **September 29, 2026**
**United States Magistrate Judge**[1]

Plaintiff Tabria Montgomery, individually on behalf of herself and as administratrix of her father's estate, and Defendant Bobst North America, Inc. ("Bobst")[2] have reached a settlement of Plaintiff's claims for strict products liability, wrongful death, and survival.[3] Plaintiff's father, Michael Montgomery,[4] sustained fatal injuries while

[1] The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (ECF 26.)

[2] Although Plaintiff directed her claims against Bobst Group North America, Inc., it maintains that its "correct corporate name . . . is Bobst North America, Inc." (ECF 17, ¶ 9; *see also* ECF 66-2 at 1 ("Defendant Bobst North America, Inc., formerly Bobst Group North America, Inc.").) The Court uses that name for purposes of this decision.

[3] Plaintiff stipulated to the dismissal of her negligence claim (Count II of her Complaint) prior to the final pretrial conference. (*See* ECF 178, 179.)

[4] For clarity, this Opinion refers to Tabria Montgomery as Plaintiff and Michael Montgomery as Mr. Montgomery.

operating a Bobst Mastercut 145 PER 2.0 Die-Cutter machine bearing Serial No. BSA05662000208/1951 ("Mastercut"). (ECF 48 at ECF p. 5.) Plaintiff has filed an unopposed Motion[5] to approve the settlement (ECF 195), which is granted for the following reasons.

The Court must independently evaluate a proposed settlement on behalf of an estate after considering "all relevant facts and the reasons why the administrator of the . . . estate believes the settlement is desirable" and in the estate's best interests. *Rodi v. Williams*, No. 12-1379, 2015 WL 1863006, at *2 (M.D. Pa. Apr. 23, 2015) (citation modified). Court approval of such a settlement "is intended to protect the estate, as well as the creditors and beneficiaries thereof." *Boykin v. Platinum Healthcare Grp., LLC*, No. 22-2939, 2024 WL 387638, at *3 (E.D. Pa. Jan. 31, 2024) (citation modified). So, Section 3323 of Pennsylvania's Probate, Estates and Fiduciaries Code provides that "[w]henever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court . . . in which such action is pending and which has jurisdiction thereof may . . . make an order approving such compromise or settlement."[6]

[5] The Court granted Plaintiff's motion for leave to file her approval Motion the public docket with the monetary terms of the settlement redacted and to provide the Court with a copy of her Motion with the monetary terms of the settlement unredacted. (ECF 193.) For the same reasons given in the Court's prior order, copies of this Opinion and the accompanying Order will be filed on the public docket with the monetary terms of the settlement redacted and will be separately docketed under seal with the monetary terms of the settlement unredacted.

[6] Survival actions are covered by Section 3323. *See Schuster v. Reeves*, 589 A.2d 731, 734 (Pa. Super. Ct. 1991).

20 Pa. C.S. § 3323(b). In addition, Eastern District of Pennsylvania Local Rule of Civil Procedure 41.2 provides that no claim of an estate "shall be compromised, settled, or dismissed," "[n]o distribution of proceeds shall be made out of any" settlement fund, and "[n]o counsel fee, costs or expenses shall be paid out of any" such fund "unless approved by the court." E.D. Pa. Loc. R. Civ. P. 41.2(a)-(c) (emphasis added). The Court applies state law to determine the proposed settlement's fairness and the reasonableness of any attorney's fees and costs to be paid from that amount. *See Williams v. CVS Pharmacy, Inc.*, No. CV 23-2775, 2024 WL 6993608, at *1 (E.D. Pa. June 7, 2024); *Nice v. Centennial Area Sch. Dist.*, 98 F. Supp. 2d 665, 669 (E.D. Pa. 2000).

Here, Plaintiff seeks the Court's approval of a settlement in the gross amount of $[redacted]. She proposes that the gross settlement amount be allocated as follows (1) $[redacted] to Saltz Mongeluzzi Bendesky, P.C. as counsel fees, per fee contract; (2) $[redacted] to Saltz Mongeluzzi Bendesky, P.C. for reimbursement of costs, per fee contract; and (3) $[redacted] as the net settlement amount to be distributed to Michael Montgomery's estate and wrongful death beneficiaries. (ECF 195, ¶ 27.) Plaintiff asks the Court to approve only the settlement amount and the proposed attorney's fees and reimbursement of costs. She does not seek approval of the specific distributions to Mr. Montgomery's estate and wrongful death beneficiaries or of the allocation of the net settlement funds between the wrongful death and survival act claims. (*Id.* ¶ 26.) She maintains that once the Court approves the proposed settlement, she "will apply to the Philadelphia County Orphan's Court for approval of the specific distributions to Mr.

Montgomery's estate and wrongful death beneficiaries and of the allocation between the wrongful death and survival act claims." (*Id.*)

**I. The Adequacy of the Proposed Settlement's Value**

The Court begins by considering whether the total settlement amount—$[redacted]—is adequate. When determining a lawsuit's "fair value," the Court typically gives "considerable weight" to the judgment of counsel and the parties. *Matter of McLean Contracting*, No. 14-5676, 2017 WL 2618855, at *1 (E.D. Pa. June 16, 2017) (citation omitted). "[T]he lawyers and parties are closer to the case and have a better handle on the risks and upsides of the litigation." *Stolar-Demharter v. Wexford Health Sources, Inc.*, No. 23-87, 2024 WL 3327768, at *1 (W.D. Pa. June 18, 2024) (citation omitted). The case's "strengths and weaknesses" should also be considered, including whether Plaintiff faced any "issues of proof that could hamstring [her] efforts to establish liability." *Tamasy v. Yough Sch. Dist.*, No. 18-1236, 2019 WL 5864893, at *2 (W.D. Pa. Nov. 8, 2019) (citation modified).

Plaintiff accurately represents that '[t]his was an incredibly difficult and complex products liability action" and that Bobst had "several formidable defenses" available to raise at trial. (ECF 195, ¶ 43.) Prior to a bifurcated trial on liability and damages, facts remaining in dispute included whether the subject Die Cutter was defective as designed due to absent guarding features, such as a light curtain and interlocking at the exterior operator platform panels and interior access point to the delivery section, and whether any design defect was a cause of Mr. Montgomery's death. (ECF 157 at 3-4.) Bobst intended to present proof in its defense that the Die Cutter was properly designed,

manufactured and installed, accompanied by adequate warnings and instructions, and safe for its intended and reasonably foreseeable uses when it left Bobst's control. (*Id.* at 5.) It also intended to present evidence of a superseding cause of Mr. Montgomery's death, namely, that "the Die Cutter was later altered, modified, bypassed, misused, maintained, or operated in a manner not intended or authorized by" Bobst. (*Id.*) Bobst also intended to challenge the extent of economic and non-economic damages that Mr. Montgomery's estate and/or wrongful death beneficiaries may have suffered as a result of his death. (*Id.*)

The parties have agreed to settle this matter for a considerable sum, and the Court has no reason to second guess their valuation of the case. Plaintiff and Mr. Montgomery's family communicated with Plaintiff's counsel throughout this litigation, including the settlement negotiations. (ECF 195, ¶ 52(w).) Before reaching their agreed-upon settlement figure, they engaged in substantial discovery and extensive litigation, including dispositive motion practice, the resolution of five expert motions *in limine* and twenty-two non-expert motions *in limine*. (*See id.* ¶ 52 (a)-(u).) The parties also engaged in private mediation and a settlement conference with my colleague United States Magistrate Judge Lynne A. Sitarski (*id.* ¶ 52(v)) before ultimately reaching their settlement during good faith settlement negotiations before me on the date of their Final Pretrial Conference. (ECF 190.) Considering the uncertain outcome of any trial, the proposed total settlement amount is adequate and reasonable.

## II. The Reasonableness of the Proposed Fees and Costs

The Court also must independently review the settlement's proposed distribution of attorneys' fees and costs. Pursuant to a contingency fee agreement, Plaintiff requests forty percent of the settlement proceeds—$[redacted]—for attorneys' fees in addition to $[redacted] as reimbursement of costs. In support of her Motion, Plaintiff has submitted an affidavit in which she represents that her attorneys kept her "fully informed" throughout this litigation and that she "was intimately involved in the settlement negotiations in this matter." ((ECF 195-2, ¶ 3.) She states that she approves of an attorneys' fee that "represents [forty percent] of the gross recovery consistent with the Contingent Fee Agreement" that she executed, and that she believes "this fee is fair and reasonable." (*Id.* ¶ 7.) She also approves of the costs that her attorneys incurred in connection with litigating this case. (*Id.* ¶ 8.)

Plaintiff submits that the requested forty percent contingency fee reflects "the fee customarily charged in th[is] locality for similar legal services." (ECF 195, ¶ 60.) Before reaching the settlement of Plaintiff's claims, her counsel's efforts were substantial. They filed a detailed Complaint, responded to motions to dismiss, prepared complex legal briefing on the issue of this Court's personal jurisdiction over former Defendant Bobst MEX SA, produced and reviewed "thousands of pages of discovery," completed seventeen fact witness depositions, completed seven expert depositions and produced complex specialized expert reports, successfully opposed a motion for summary judgment, engaged in extensive briefing on five expert motions in limine and twenty-two other motions to preclude evidence, prepared pretrial submissions (including working

with opposing counsel to prepare a Joint-Pretrial Stipulation, proposed *voir dire*, verdict sheet and jury instructions), and engaged in more than one effort to settle Plaintiff's claims. (*See id.* ¶ 52(a)-(w).) Plaintiff's counsel reports spending "hundreds of hours putting this case together to achieve this full and complete settlement," and that had Partners Jeffrey P. Goodman and Samuel B. Dordick, and Associate Max H. Dehon[ ] not dedicated so much time to this particular matter over the past two plus years[,] they would have been able to work on other matters for other clients." (*Id.* ¶ 59.) Plaintiff represents that the requested fee is appropriate because Plaintiff's attorneys "have extensive experience handling complex catastrophic injury, products liability, and wrongful death cases," with recognized leadership in this field in this jurisdiction and elsewhere. (*Id.* ¶ 63.)

"A settlement that protects a contingency fee and recovery of costs first and an estate's recovery thereafter is the proper subject of close judicial scrutiny." *Est. of Eckelberry v. CSX Transp., Inc.*, No. 18-365, 2019 WL 5068413, at *3 (W.D. Pa. Oct. 9, 2019) (citation omitted). Nevertheless, "courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties." *Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 215 (3d Cir. 1999). For that reason, courts have approved attorneys' fee awards of up to forty percent of the settlement proceeds in wrongful-death/survival actions. *See, e.g., Evanoff v. Marsh USA, LLC*, No. 23-3417, 2024 WL 3330571, at *2 (E.D. Pa. July 8, 2024) (approving fees based on a forty percent contingency rate); *Kaufman v. Jetson Elec. Bikes, LLC*, No. 22-3765, 2024 WL 659490, at *2 (E.D. Pa. Feb. 16, 2024) (same); *Boykin*, 2024 WL 387638, at *7 (finding a fee award based

on a forty percent contingency fee arrangement was "reasonable under the circumstances"); *Salas v. Goldenberg*, No. 22-2179, 2023 WL 8832422, at *2 (E.D. Pa. Dec. 20, 2023) (holding the plaintiff's counsel was entitled to forty percent of the gross settlement amount as legal fees under a contingent fee agreement); *Stolar-Demharter*, 2024 WL 3327768, at *2 (approving a forty percent fee award based on the parties' contingency fee agreement); *Hammonds v. Luzerne Cty.*, 19-2199, 2020 WL 5517496, at *2 (M.D. Pa. Dept. 14, 2020) (approving a fee based on a forty percent contingency fee agreement). While the requested forty percent contingent fee recovery "is substantial, it reflects the significant time and resources [that Plaintiff's] skilled attorneys invested into litigating this matter and the risk they undertook in doing so." *Evanoff*, 2024 WL 3330571, at *2. Given the circumstances of this case and counsel's agreement with Plaintiff regarding the applicable contingent fee percentage and the responsibility for costs for the items listed in Plaintiff's Exhibit D (ECF 195-4), the parties' agreed-upon terms result in an appropriate proposed award of fees and costs.

**III. Apportionment of the Settlement**

Finally, Plaintiff explains that she is not asking this Court to approve the specific distributions to Mr. Montgomery's estate and wrongful death beneficiaries or the allocation of the net settlement funds between the wrongful death and survival act claims. (ECF 195 at 5-6.) Instead, she explains that she will apply to the Philadelphia County Orphan's Court for its approval of these details. (*Id.*)

The settlement encompasses Plaintiff's survival and wrongful death claims. The benefits of a survival action go to a decedent's estate, which are then distributed to the

heirs. *See Funk v. Buckley & Co.*, 45 A.2d 918, 921 (Pa. Super. 1946); *see also Smith v. Sandals Resorts Int'l, Ltd.*, 709 F. Supp. 2d 350, 358 (E.D. Pa. 2010) ("Survival action proceeds are divided among the heirs of the decedent, either through decedent's will or by the laws of intestate, regardless of pecuniary loss."), *aff'd*, 437 F. App'x 178 (3d Cir. 2011). In contrast, wrongful death actions "belong to the decedent's beneficiaries as opposed to the deceased individual."[7] *Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 305 (Pa. Super. 2017). "Under Pennsylvania law, beneficiaries of a wrongful death action share according to the law of intestate distribution." *Stecyk v. Bell Helicopter Textron, Inc.*, 53 F. Supp. 2d 794, 798 (E.D. Pa. 1999) (*citing* 42 Pa. C.S. § 8301(b)). "[W]here wrongful death and survival actions are settled for a single amount, the amount apportioned to the survival action must be approved by a court having jurisdiction." *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990) *cited by Kaufman*, 2024 WL 659490, at *1.

Under the probate exception, "a jurisdictional limitation on the federal courts originating from the original grant of jurisdiction in the Judiciary Act of 1789," a federal court has no jurisdiction to administer a decedent's estate. *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 226-27 (3d Cir. 2008). So, to the extent that distribution of the net settlement amount requires the administration of Mr. Montgomery's estate, the Court lacks jurisdiction to make an appropriate determination. *See Kaufman*, 2024 WL 66036, at *3. As a result, the Court approves Plaintiff's request to defer apportionment of the net

---

[7] This distinction matters because, "damages in a survival action may be subject to inheritance or estate taxes, while damages in a wrongful death action may be subject to income taxes." *Cappel v. Aston Twp. Fire Dep't*, No. 23-155, 2025 WL 449538, at *2 (E.D. Pa. Feb. 10, 2025).

settlement amount to the Orphan's Court. It is in the best position to protect Mr. Montgomery's estate and its creditors and beneficiaries, consistent with the intent of 20 Pa. C.S. § 3323(b). *Boykin*, 2024 WL 387638, at *3; *see also Soares v. McClosky*, 466 F. Supp. 703, 707 (E.D. Pa. 1979) (explaining that Section 3323 "protects potential beneficiaries, assures that the taxing authority gets its due, and shelters the decedent's representative from subsequent liability").

## IV. Conclusion

Because final distribution of the net settlement amount remains contingent on Plaintiff's further actions in the Orphan's Court, the Court approves the gross settlement amount, the proposed distribution of attorneys' fees and costs, and the net settlement amount, but declines to enter an order of dismissal until her counsel files an affidavit certifying that the net settlement amount has been distributed in compliance with the Philadelphia County Orphan's Court's still-to-be determined requirements.

An appropriate Order follows. [8]

[8] Because the specific terms of the parties' proposed settlement agreement are not presently before the Court, the Court does not know whether they have agreed to this Court's continuing jurisdiction over the settlement. If the parties in a federal case settle and the court dismisses it, the court does *not* automatically keep jurisdiction over any disputes relating to that settlement. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–82 (1994).